No. 33,985

Blanche Donaldson, *Appellant,* v. Grace G. Kemper as an Individual and as Administratrix of the Estate of W. H. Kemper, Deceased, *Appellee.*

(87 P. 2d 535)

Opinion filed March 4, 1939.

*Otis S. Allen, George S. Allen, W. Glenn Hamilton* and *Raymond Briman,* all of Topeka, for the appellant.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action for damages for injuries sustained by plaintiff when she stumbled and fell into a pit in the furnace room of an apartment house in Topeka.

Plaintiff's petition narrated the facts at some length. Defendant answered with a general denial and a plea of contributory negligence. The cause was tried before a jury. At the conclusion of plaintiff's evidence, defendant's demurrer thereto was sustained.

Hence this appeal. Whether plaintiff sufficiently established her cause of action to withstand defendant's demurrer will require the evidence to be stated at some length. Involved in this legal question is the related one raised by defendant's plea of contributory negligence.

Plaintiff's evidence tended to show that defendant owned an apartment house in Topeka; that on July 22, 1935, plaintiff leased one of those apartments for a term of one year to begin on August 15, 1935, at a rental of $35 per month. The date the lease was to begin was fixed to accord with the date plaintiff's right of occupancy in some other abode would expire. By a mutual understanding of the parties plaintiff was permitted to move into the apartment on August 1, rent free until August 15. On the ground floor was a wash room in which was kept a receptacle for waste papers and other rubbish. The tenants had access to that room and the use of that receptacle; plaintiff had been made aware of that, and her written lease so provided. On the ground level or slightly below, there was a furnace room which was usually kept locked and to which the tenants did not ordinarily have right of access. The ceiling of the furnace room was so low that to accommodate the furnace a pit some eighteen inches deep had been dug in the floor. This pit was somewhat larger than the furnace, but its exact dimensions are not stated in the record.

On August 5, plaintiff came out of the apartment house carrying some papers she wished to burn. She walked toward a trash burner situated near at hand. Defendant halted her, explained that the trash burner belonged to a neighbor and that the waste materials of defendant's tenants were burned in the furnace. Defendant told plaintiff to follow her, and thereupon she unlocked the furnace-room door and entered, and the plaintiff followed. The furnace room appeared to be in complete darkness until one's eyes got adjusted to the surroundings, and plaintiff did not see where or in what direction defendant had gone. Plaintiff, however, proceeded in the darkness until she stumbled into the pit surrounding the furnace and broke her leg. Testifying in her own behalf, touching the circumstances of the accident, plaintiff's evidence reads, in part:

"Q. Well, standing at the threshold, how far into the furnace room could you see? A. I couldn't see at all.

"Q. Didn't you take any precautions by feeling with your foot to see if that floor was up, or down, or level? A. I walked right in. I saw Mrs. Kemper walk in, and I did too.

"Q. You never saw the furnace any time before or after you fell? A. I believe I saw it after I fell.

"Q. You just testified that you didn't see her at all. A. I didn't see her after she went in there.

"Q. Why didn't you, if you expected Mrs. Kemper to burn it, why didn't you hand it to her on the outside? A. I don't know. She just told me to bring them in.

"Q. You knew at that time, and you know now, that pitch darkness is a sign of danger and that you are liable to run into anything? A. Yes, sir.

"Q. You didn't wait and let your eyes become adjusted to the darkness? A. No, sir.

"Q. Did you see Mrs. Kemper at any time after she entered the furnace room? A. Not until I fell against her.

"Q. Mrs. Kemper never told you to go into the furnace room? A. She didn't tell me to.

"Q. You just simply went in there blindly, when you couldn't see. That is a fact, isn't it? A. As I say, I followed her in."

Other witnesses called by plaintiff also testified that it was impossible to see in the furnace room until the eyesight had some time to get accustomed to the semidarkness.

On the complete frankness and fullness of plaintiff's own testimony and that of her witnesses, counsel for appellee contend that plaintiff's contributory negligence was so clearly established that the trial court properly disposed of the case by its summary ruling on defendant's demurrer. It is argued that plaintiff confessedly violated the rule which requires every mature and rational person to exercise due care for his own safety, and that when she entered the furnace room in the darkness, knowing nothing of the surroundings, taking no precautions for her own safety, she admitted her failure to exercise due care, and her contributory negligence was confessed. Among the cases cited by defendant in support of the judgment of the district court is *Kurre v. Graham Ship By Truck Co.*, 136 Kan. 356, 15 P. 2d 463, where this court held that an invitee who came

on another person's loading dock in the darkness, where he was unfamiliar with the surroundings, but nevertheless proceeded on a course altogether of his own choosing, and in consequence walked off the edge of the dock and was injured, his contributory negligence was so obviously clear that reasonable minds should not have disagreed about that fact and the trial court should have so ruled as a matter of law. A rereading of that case and of the supporting authorities cited in the opinion satisfies us that it was well decided; but a majority of this court see no difficulty in distinguishing it from the one at bar. In the Kurre case, the plaintiff walked all over the floor of the darkened warehouse in a course of his own choosing. Here that can hardly be said of plaintiff. The circumstances tended to show that it was in response to defendant's remarks that plaintiff followed into the furnace room; that it was at defendant's invitation. Plaintiff testified, "She told me to follow her." Defendant unlocked the furnace-room door and said, "We burn our trash in the furnace." Mrs. Kemper said to "bring her trash into the furnace room."

We think plaintiff's evidence made it reasonably clear that defendant was negligent when she led plaintiff into the dark furnace room without some words of guidance or caution. What defendant did say and do tended to assure plaintiff that it would be safe to follow her into the furnace room. It is, of course, a fair talking point, and one which may appeal to a jury, that plaintiff herself was negligent in proceeding into the darkness after she lost sight of defendant; but this court holds that that point was exclusively for a jury to consider, and did not justify a disposal of this cause on a demurrer to plaintiff's evidence.

This court does not overlook the fact that the written lease apprised plaintiff of the proper disposition to be made of her waste papers. And touching the legal question as to the relationship of the parties, this court holds that although the stipulated rental period did not begin until August 15, yet to practical intent and purpose the relation of landlord and tenant did exist when the accident occurred; and the nice question whether plaintiff should be regarded as an invitee or a mere licensee when she entered the furnace room had no controlling significance under the circumstances.

The judgment is reversed and the cause remanded for further proceedings.

HARVEY, J., dissenting.
ALLEN, J., not sitting.