No. 34,697

A. E. Bass, *Appellant,* v. Charles Hunt, Lena Hunt, Guy C. Seeley and Arthur Gray, *Appellees.*

(100 P. 2d 696)

Opinion filed April 6, 1940.

*A. D. Weiskirch, Jr.,* of Topeka, for the appellant.

*Hugh T. Fisher, B. F. Messick* and *David H. Fisher,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to recover damages for personal injuries. A demurrer was sustained to the plaintiff's evidence and he appeals.

In a preliminary way it may be stated that one J. S. Cohen was the owner of a building facing west on Kansas avenue in Topeka. The ground floor of that building was divided into three rooms. There was a cross partition which created a storage room to the rear of the building. The portion to the front was divided by a partition running lengthwise in such manner as to create two rooms facing on the street. The north room was occupied by the Pennington Ice-cream Parlor and the south room was occupied by a restaurant conducted by the defendants. In the southeast corner of the storage room was a toilet. In the floor of the storage room was a trap door which led to the basement.

Briefly stated, plaintiff's petition alleged that on May 7, 1938, he had entered defendants' restaurant and ordered his dinner, made

inquiry as to the whereabouts of the toilet facilities and was informed thereof by an employee of defendants; that he proceeded to the toilet, but upon returning therefrom to the restaurant proper, he fell into an unguarded trap door and stairway, injuring himself, the proximate cause of his falling being negligence of the defendants in that the means of ingress and egress to the toilet was improperly lighted; that there was no guardrail around the trap door and open stairway nor other warning to apprise plaintiff it was there. The defendant, Lena Hunt, answered denying generally and she specifically denied that she operated, controlled or managed the restaurant. The defendant, Gray, filed no answer. The other defendants filed separate answers in which they alleged that they rented the restaurant room from Cohen; that the north room was occupied by Pennington; that the north side of the storage room was occupied with property of the owner Cohen; that toilet facilities were furnished by Cohen and were used by all of the tenants and their patrons. There was also an allegation that plaintiff had settled with Cohen. There was further allegation that plaintiff went to the toilet without injury, but in returning to the restaurant he did not retrace his route, and if he sustained any injury it was caused by his own negligence. Plaintiff's reply, so far as need be noticed, was a denial he had made a complete release, and an affirmative allegation that Cohen and the defendants were not joint tort-feasors.

Plaintiff, as a witness in his own behalf, testified that he and his wife went into the restaurant on the night of May 7, 1938. He inquired of defendant Gray whether he could use the toilet, and Gray took him to the door in the partition and said, "Right back there." Gray told him about a cord or string to turn on the light in the toilet. He pulled that cord and could see the light through the door of the toilet. It was dark in the room, he could not see, and he kept his right hand on the cord and followed it to the toilet. This placed him on the north side of the cord, and on the way he did not see any trap door. After using the toilet, he started back to the restaurant, walking straight west. He could see light around the door in the partition and went toward it, but he did not keep hold of the cord, as he was using his hands to arrange his clothing. He thought he was following the route by which he came. On the way back he stepped into the open stairway, the trap door having been left open. Gray, one of the defendants, was called as a witness and testified concerning plaintiff's request and that he directed him and told him

about the cord and the light. He stated the cord ran from the partition door to the toilet and that if you walked north of the cord you would not walk over the trap door, but if you walked two feet to the south of it you would. He also stated the defendants maintained the toilet by furnishing the light and toilet paper, .kept it clean, etc., and that they used the storage room for cleaning vegetables, waitresses used it as a dressing room to change uniforms, etc. There was a light fixture in the storage room which witness operated to turn on a light after Bass had fallen. His testimony also showed that Cohen had goods stored in the rear room; that employees of all tenants used the toilet. He also testified that there was an electric refrigerator in the basement and that Hunt had been down there before dark to oil it. Witness did not know the trap door was not closed when he directed plaintiff to use the toilet. Other witnesses testified to the use of the storage room. A fire inspector testified he had told Hunt the trap door should be kept closed or rails should be put around it.

The defendants' demurrer to the above evidence was sustained, and plaintiff appeals.

In a counter abstract we are supplied with a copy of the remarks of the trial court giving its reasons for ruling as it did. Briefly stated, that court was of opinion the evidence showed the defendants, with other tenants and the owner, had joint use of the back or storage room and the toilet therein; that the duty to keep that part of the premises in repair and safe for the users thereof was that of the owner; that plaintiff's action was founded on a claim of negligence and his evidence had failed to show breach of any duty by the defendants insofar as any premises under their control was concerned; that plaintiff's theory was defendants should have warned him of danger, but he had failed to show defendants knew the trap door was open; that it was shown the storage room was dark and the plaintiff was confronted with a duty not to proceed without knowing he could safely do so; that he went to the toilet by following the cord and he should have returned by the same route; he did not do so and was guilty of negligence.

Appellant's contention, as stated in his brief, is that a restaurant operator is liable to one who, coming into his place of business as a guest, falls into an unguarded opening over which there is a trap door which had not been closed, and that it is immaterial who left it open; that the operator is bound to exercise due care to maintain

his premises in a reasonably safe condition, and if he knew or should have known the trap door was open, he is responsible. On the main question whether there was negligence, the appellees contend that the evidence shows only that they had a permissive use of the storage room; that the responsibility of keeping the open stairway guarded was that of the landlord; that the evidence does not disclose they knew the trap door was open; that the plaintiff did not follow the directions given, and there was no liability on their part.

For the reason the trial court did not refer to it when ruling on the demurrer, and the further reason appellant does not refer to it in his brief, we assume the trial court's attention was not directed to a pertinent statute, G. S. 1935, 36-111, which provides that in all cities having a public system of waterworks and sewerage, every restaurant shall be equipped with suitable water closets for the accommodation of its guests, nor to another statute of less pertinency, G. S. 1935, 36-113, that each restaurant shall be provided with a main public washroom, convenient and of easy access to guests. (Compare *Criswell v. Bankers Mtg. Co.*, 128 Kan. 609, 298 Pac. 722, where it was attempted to use the statute as a defense.) It may here be observed that in the testimony the witnesses all used the word "toilet," not water closet or washroom. The word "toilet" might refer to either or both. (See Webster's New International Dictionary for definition 5 of the word "toilet.") In view especially of the first statute, we think it may not be said that plaintiff was a guest and invitee so long as he remained in the restaurant room proper, but that when he went to the toilet he was a licensee—he was an invitee at all times. Neither do we think it may be said the defendants did not have control of the premises. In addition to the statutory requirement that they furnish toilet facilities for the use of their guests, there was evidence that they furnished the facilities and that they maintained them by furnishing lights and toilet paper and that they kept the place clean and in order. We cannot agree the undisputed evidence shows that the landlord Cohen was in possession and actual control of the rear room and toilet and that defendants had only a permissive use of them. Under the circumstances here obtaining, we think it unnecessary to discuss the various authorities cited by appellees tending to show that where premises are let to several tenants, all using certain portions in common, the landlord is held to be in control, and under duty to exercise reasonable care and diligence to keep such parts in safe condition,

including *Hinthorn v. Benefer,* 90 Kan. 731, 136 Pac. 247, 36 C. J. 212 and 213, and 16 R. C. L. 1072. They also cite 36 C. J. 247, where it is said:

"It has been held that a tenant of a part of the demised premises is not liable for injuries received by his invitee by reason of the unsafe condition of a walk used by him in common with other tenants and over which the landlord had general control."

The citation in support of that statement is *Dierkes v. Wolfe-Swehla Dry Goods Co.,* 210 Mo. App. 142, 243 S. W. 269, where it was said:

"Where a walk was used by all the tenants in the building for access to the parts of the building occupied by them, the duty to keep it in repair and in a safe condition devolved upon the landlord, and hence a tenant who knew nothing concerning the unsafe condition of the walk and which was in no way under his control was not liable for an injury received thereon." (Headnote.)

And the rule contended for by the appellees has some exceptions. In *Kallenbach v. Manne,* 138 Kan. 797, 28 P. 2d 746, parts of a building had been let to different tenants. There was a walk leading to various parts of the building used by various tenants and others. In the walk were doors which, when opened, led to the cellar stairs. A customer of the store passed over the closed doors. While he was in the store, someone opened the doors and on leaving he fell into the stairway. He brought an action against the landlord and the tenant. It was held:

"Where cellar doors over which customers entering a store are compelled to walk are in a safe condition in themselves and only become dangerous when one of them is left open by some third person, the fact that the cellar doors were left open does not render the landlord liable in damages to one lawfully on the premises who falls into the open cellarway and is injured." (Syl.)

The evidence shows that defendant Hunt had been to the basement before dark to oil the refrigerator; that defendant Gray, when directing plaintiff, did not turn on an available light which would disclose the condition, but only instructed plaintiff about turning on the small light in the toilet; that Gray made no effort to ascertain whether the trap door was open or closed nor did he warn plaintiff; that if a right-handed person proceeding to the toilet followed the cord he would miss the stairway to the basement, but if he returned using his right hand on the cord, he might or might not step into the opening if the trap door was not closed, depending on the angle he held his arm.

A statement of the rule of liability of possessors of land to business visitors may be found in 2 Restatement, Torts, § 343, viz.:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility."

(See, also, 2 Restatement, Torts, § 360, comment a.)

The general rule there set forth has been followed in this state. In *Reese v. Abeles*, 100 Kan. 518, 164 Pac. 1080, L. R. A. 1917E, p. 747, it was held:

"The proprietor of a store is liable in damages to a customer who falls into an open stairway in the floor which is partially obscured in semidarkness caused by piles of merchandise stacked thereabout, when the customer went into the vicinity of the stairway to inspect certain shelf goods near by in response to a special invitation of the proprietor, who at the same time failed to give her a warning of the presence of the stairway." (Syl. ¶ 2.)

In *Criswell v. Bankers Mtg. Co.*, supra, it was held:

"It is the duty of a hotelkeeper to keep in a reasonably safe condition those portions of his hotel where his guests may be expected to come and go, and it cannot be said as a matter of law that there was no actionable negligence in his failure to sufficiently light a hallway through which the plaintiff had to go to reach her room and whereby she walked through an open doorway and fell down a stairway and was injured, but the issues of fact concerning the hotelkeeper's negligence and of plaintiff's contributory negligence were for the jury." (Syl. ¶ 2.)

See, also, *Ziegler v. Manufacturing Co.*, 108 Kan. 589, 196 Pac. 603, and *Thogmartin v. Koppel*, 145 Kan. 347, 65 P. 2d 571, and notes in 21 L. R. A. 456, and L. R. A. 1915F 572; also, *Hamblet v. Buffalo Library Garage Co.*, 225 N. Y. S. 716, treating of the duty of a shopkeeper towards his customer as to the condition of his premises.

We think it may not be said the evidence failed to disclose negligence on the part of defendants.

Did the evidence show the plaintiff was guilty of negligence which precluded his recovery? Appellees say he was—that he followed a course of his own choosing, in a place with which he was unfamiliar

and which was so dark he could not see. They rely on *Kurre v. Graham Ship by Truck Co.*, 136 Kan. 356, 15 P. 2d 463, where it was held:

"Where a business invitee enters the premises of the inviter and follows a course of his own choosing, with which he is unfamiliar, and which is so dark that he cannot see, resulting in his injury, he is guilty of contributory negligence." (Syl. ¶ 2.)

As a reading of that decision will show, the statement of the syllabus was very accurate in saying that plaintiff followed a course of his own choosing. In the case before us, the plaintiff on his way to the toilet followed the route to which he was directed. His testimony is that on his return he thought he was following and retracing that route. He could see the light around the door through which he had passed in going to the toilet and went toward it. So far as the record shows, no one had directed him that he must come back in exactly the same path he went. His return could hardly be called following a path of his own choosing. Under the circumstances, was he under a duty to hunt up the cord, hold it in his left—not his right—hand, and follow it, or to call for help, or more light, in order that it might not be said he was negligent as a matter of law? We think not. Whether he was guilty of negligence was a fair question for the jury.

Appellees' contention that the plaintiff had settled with the landlord needs little discussion. The document which it is contended bars the plaintiff is set out in the counter abstract, and is in form an affidavit by Bass that he had signed a covenant not to sue Cohen. The covenant itself is not before us. Apparently the trial court did not pass on the question, but based its ruling on other grounds. The present state of the record does not warrant further discussion.

The judgment of the trial court is reversed.