No. 34,850

JOE CAMPBELL, *Appellant*, v. CLAUDE WEATHERS, doing business as WEATHERS CIGAR STORE AND LUNCH, THE FIRST NATIONAL BANK of WICHITA, as Trustee of the Colar Sims Estate, and R. E. BLACK, as Manager, etc., *Appellees*.

(111 P. 2d 72)

Opinion filed March 8, 1941.

*John H. Gerety, Richard E. Kirkpatrick* and *Richard O. Jones,* all of Wichita, for the appellant.

*John B. Bryant* and *B. Mack Bryant,* both of Wichita, for appellee Weathers; *Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for appellees First National Bank of Wichita and R. E. Black.

The opinion of the court was delivered by

WEDELL, J.: This was an action against three defendants to recover damages for personal injury. The demurrers of the defendants to plaintiff's evidence were sustained and those rulings constitute the sole basis of appeal.

The defendants were the lessee of a building, who operated a cigar and lunch business, the owner of the building and the owner's manager of the building.

The building was located in the business section of the city of Wichita, and at the southeast corner of an intersection. The building faced the north. It had an entrance at the west front corner and from the north near the northeast corner. A counter was located near the front and across the building east and west. Between the east end of the counter and the east wall of the building was an opening which led to a hallway along the east side of the building. The hallway led to a toilet which was located toward the west end of the hall. The toilet was west of the hallway. Immediately to the south of the portion of the building occupied by the defendant lessee another tenant operated a shoeshine parlor. There was an entrance to the shoeshine parlor from the west. There was access from the shoeshine parlor to the toilet and hallway by means of a door into the toilet. There was a trap door in the floor of the hallway approximately half way between the lunch counter of the defendant lessee and the toilet room. The hallway was 29 or 31 inches in width. Plaintiff had been a customer of the defendant lessee for a number of years. On Sunday morning, June 4, 1939, between 8:30 and 9 o'clock, plaintiff entered the place of business operated by the defendant lessee as a cigar and lunch business. He spent probably fifteen or twenty minutes in the front part of the building and then

started for the toilet. He stepped into the open trap door in the floor of the hallway, broke his right arm and sustained some other injuries.

Other pertinent facts will be considered in connection with the contentions of the respective parties.

We shall first consider the sufficiency of the evidence to take the case to the jury on the question of lessee's liability. Lessee demurred to the evidence upon the ground it showed that if plaintiff sustained an injury it was due to his own contributory negligence and not the negligence of Weathers, the lessee. Appellant contends that demurrer raised only the question of his contributory negligence. The contention is not good. The demurrer was intended to raise, and did raise, also, the question of the sufficiency of the evidence to show negligence on the part of the lessee. It was so considered and ruled upon.

The first issue to be determined is the relationship between plaintiff and the lessee. Was plaintiff a trespasser, a licensee or an invitee? The answer must be found in the evidence. A part of the answer is contained in the nature of the business the lessee conducted. It is conceded lessee operated a business which was open to the public. Lessee's business was that of selling cigars and lunches to the public. It was conceded in oral argument, although the abstract does not reflect it, that the lessee also operated a bar for the sale of beer, but that beer was not being sold on Sunday, the day of the accident. Plaintiff had been a customer of the lessee for a number of years. He resided in the city of Wichita. He was a switchman for one of the railroads. He stopped at the lessee's place of business whenever he was in town. He had used the hallway and toilet on numerous occasions, whenever he was in town, and had never been advised the toilet was not intended for public use. When he entered lessee's place of business the lessee and three of his employees were present. He thought he had stated he was going back to use the toilet, but he was not certain he had so stated. None of the persons present heard the remark. He saw no signs which warned him not to use the hallway or toilet. The hallway was the direct route to the toilet. One of lessee's employees testified he had never been told by the lessee or anyone else that the toilet was a private toilet. On that point the examination of one of lessee's employees discloses the following:

"Q. Mr. Hodges, do you know or were you ever told by Mr. Weathers or by Mr. Black or anybody who purported to be the manager of that building that that toilet was a private toilet? A. No, sir.

"Q. Do you know whether or not it was used by people other than the employees and the lessees and lessors of that building? A. Yes, sir.

"Q. Well, was it used? A. Yes, it was used by everybody, used by the public."

Appellant insists the evidence discloses he was an invitee. Appellee counters with the contention appellant was not an invitee for the purpose of using the toilet. Appellee also urges the evidence does not disclose appellant purchased anything on this particular day and hence was not a customer on this occasion.

The evidence disclosed appellant had been a regular customer of the lessee for a number of years and that he had used the hallway and toilet about every day he had been in town. He had never seen any signs not to use the toilet and had never been forbidden to use it. That the public had a general invitation to be or to become lessee's customers cannot be doubted. It appears the trial court sustained the demurrer on the ground appellant had received no specific invitation or express permission to use the toilet on this particular occasion. Was a specific invitation or permission necessary in this case? That lessee was operating a lunch counter is conceded. No valid reason is advanced by appellee for his contention that lessee was not conducting a restaurant business within the ordinary acceptation of that term. We think it would constitute undue and unwarranted nicety of discrimination to say that a person who operates a public lunch counter is not engaged in the restaurant business. This appellant, a restaurant operator in the city of Wichita, was required by statute to provide a water closet for the accommodation of his guests. G. S. 1935, 36-111 and 36-113, required that he furnish a public washroom, convenient and of easy access to his guests. (*Bass v. Hunt*, 151 Kan. 740, 100 P. 2d 696.) The word "toilet" might refer to either a water closet or washroom. (p. 743.) Appellant was an invitee not only while in the front part of the place of business where the lunch counter was located but while he was on his way to the toilet. He was an invitee at all times. (*Bass v. Hunt*, supra, p. 743.) Appellant had been a regular customer of the lessee for a number of years. We think it is clear appellant, in view of the evidence in the instant case, was an invitee to use the toilet. (*Bass v. Hunt*, supra; *Duens-*

*ing v. Leaman,* 152 Kan. 42, 45, 102 P. 2d 992; Restatement, Torts, § 332; 45 C. J. 835, § 242; 20 R. C. L. 65, § 57.) The mere fact appellant had received no special invitation or specific permission on this particular occasion to use the toilet provided for guests or invitees did not convert him into a mere licensee. (*Duensing v. Leaman,* supra, p. 45.) The evidence is clear appellant had used the hallway and toilet for a number of years and that it was used by everybody.

Can we say, as a matter of law, in view of the record in this particular case, appellant had no implied invitation to use the toilet simply because he had not made an actual purchase before he was injured? Assuming for the moment that it might be necessary under some circumstances for a regular customer of long standing to be an actual purchaser on the particular occasion of his injury to constitute him an implied invitee to use the toilet, does the evidence in the instant case compel such a ruling on the demurrer? We think it does not. We are not now concerned with what a jury may ultimately conclude from all the evidence. We are now concerned only with the question whether we can say as a matter of law, in view of the evidence thus far presented, that appellant was not an invitee to use the toilet facilities. On a demurrer the evidence must be construed in the light most favorable to the party adducing it and courts may indulge only in inferences favorable to the party adducing it. (*Jones v. McCullough,* 148 Kan. 561, 83 P. 2d 669.)

The evidence of lessee's own employee was that the toilet was not regarded as a private toilet. The evidence is that it was not used only by the lessor, the lessee, or by lessee's employees. Did the evidence disclose that in addition to the lessor, the lessee and his employees, it was to be used only by customers of the lessee? It did not. The positive and unqualified testimony was: "It was used by everybody, used by the public." Neither the trial court nor this court can alter that testimony. Neither may courts reduce or minimize its significance. On demurrer we are compelled to accept the evidence at its face value, namely, that the lessee provided the toilet facilities for anybody who saw fit to use them. In a densely populated business district such a privilege may have constituted a distinct inducement to bring, not only old customers like appellant, but prospective customers into lessee's place of business. It is not our province to say the lessee could not provide such facilities or hold out such inducement. The jury may ultimately determine that toilet

facilities were not provided by the lessee for the use of everybody. Such a negative finding, however, would be directly contrary to the evidence before us now. The evidence before us is the only evidence with which we are now concerned.

For this court to say everybody, including appellant, was invited to use the toilet facilities does not even require that we indulge in any inference in appellant's favor, it simply requires that, on demurrer, we do not ignore the plain, direct and unqualified testimony of lessee's own employee. But we need not rest our conclusion that appellant was an invitee upon the fact that, according to the unqualified evidence, not only customers but everybody was permitted to use the toilet.

The writer cannot subscribe to the theory that a regular customer of long standing is not an invitee to use toilet facilities required by law to be provided by the operator of a restaurant, simply because the customer had not actually made a purchase on the particular occasion of his injury, prior to his injury. It would seem doubtful whether such a doctrine could be applied justly to regular customers of a business which the law does not specifically require to be supplied with toilet facilities, but which does so for the convenience or accommodation of its guests. Women do a great deal of shopping. They sometimes shop all day in their favorite stores and fail to make a single purchase. Shall courts say, as a matter of law, they were not invitees of the business simply because on a particular occasion they had not yet made a purchase? No business concern would contend they were not invitees unless perchance an injury had occurred. Men frequently, during spare moments, step into a place of business, which they patronize regularly, where drinks, cigars and lunches are sold. They may not have intended definitely to presently make a purchase. They may, nevertheless, become interested, for example, in a new brand of cigars on display which they may purchase then or on some future occasion. Would the owner or operator of the business contend they were not invitees? We do not think so. Then why should courts arbitrarily say so, as a matter of law? It is common knowledge that business concerns invest huge sums of money in newspaper, radio and other mediums of advertising in order to induce regular and prospective customers to frequent their place of business and to examine their stocks of merchandise. They do not contemplate a sale to every invitee. They do hope to interest regular customers and cultivate prospective customers. It

is common knowledge that an open door of a business place, without special invitation by advertisement or otherwise, constitutes an invitation to the public generally to enter. Shall courts say, as a matter of law, that such guests are not invitees until they actually make a purchase? We think the mere statement of the question compels a negative answer. Manifestly this does not imply that a trespasser or a mere licensee who enters the premises on a personal errand for the advancement of his own interest or benefit is entitled to the protection due an invitee. In the case of *Kinsman v. Barton & Company*, 141 Wash. 311, that court had occasion to determine what constituted an invitee, and said:

"An invitee is one who is either expressly or impliedly invited onto the premises of another in connection with the business carried on by that other. . . . If one goes into a store with the view of then, or at some other time, doing some business with the store, he is an invitee." (pp. 313, 314.)

See, also, 45 C. J. 815, § 223; *MacDonough v. Woolworth Co.*, 91 N. J. L. 677; *Jones v. Bland*, 182 N. C. 70. In the MacDonough case, *supra*, it was held:

"The implied invitation of the storekeeper is broad enough to include one who enters a general store with a vague purpose of buying if she sees anything that strikes her fancy." (Syl. ¶ 1.)

Of course, if it appears a person had no intention of presently or in the future becoming a customer he could not be held to be an invitee, as there would be no basis for any thought of mutual benefit. (45 C. J. 812, § 221, and cases cited.)

It is true, in the instant case, there was no direct evidence of appellant's intention to make a purchase on this particular occasion. We cannot, however, well ignore the pertinent fact that this appellant had been a customer of lessee of long standing. He had patronized lessee's business for a number of years and had done so whenever he was in town. In view of this record, we think it unreasonable to say, as a matter of law, appellant lost his status as an invitee, simply because he had not actually made a purchase prior to his injury on this single occasion, or because the record did not affirmatively disclose he actually intended to make a specific purchase presently or in the future. There is nothing in the record which remotely indicates appellant had abandoned his practice to continue patronizing the lessee, and his presence there on this occasion is some evidence he had not abandoned such previous custom.

Did the lessee violate any duty to appellant, an invitee? The specific negligence alleged was:

"1. That they caused an opening to be made in the middle of the dimly lighted hallway leading to the toilet, knowing that the said hallway was used by customers, employees and the general public.

"2. That they negligently failed to warn this plaintiff of the hole in the said floor and of the dangerous condition caused by the hole being left open in the floor.

"3. That they negligently failed to warn this plaintiff of the insufficiently lighted and darkened condition caused by the defendants in the said hall. At the time the plaintiff entered into the said hall, the defendants and their agents knew well that the hole was not properly lighted and that there was no lid on the hole that this plaintiff stepped into, and that they, the defendants, and their agents, negligently failed to warn this plaintiff of the condition of the said floor."

It was also alleged the foregoing acts of negligence were directly responsible for the injury sustained.

The trap door in the hallway was opened on the day before the accident. It was opened in order to obtain ventilation underneath the floor and in order to get relief from dampness and the muddy ground, preparatory to reënforcing the floor. It was left open on Sunday, the day of the accident, at the suggestion of the lessee. The hallway was very narrow, only 29 or 31 inches in width. The trap door covered enough of the floor so as to make it impossible or highly inconvenient for persons to pass between the east side of the hole and the east wall without walking sideways. That distance was between six and eight inches, or perhaps one foot. On the morning of the accident the hallway was dark or dimly lighted. There was an electric light suspended from the ceiling, but it was not lighted at the time of the injury. It appears, if appellant stated he was going to the toilet, no one heard the statement. Appellant did not know the trap door was open. He saw no signs to warn him it was open and no one in person advised him concerning it. The lessee previously had been expressly warned by one of his own employees that he had almost fallen into the hole and that it should be closed or someone would be injured and sue him. The employee thought the lessee advised him to leave the hole open. At any rate it was left open. It was the custom to clean up on Sunday mornings and to throw trash into the hallway. After appellant started for the toilet he passed the porter, who had a broom in his hand. Owing to the lack of light, appellant could see only the image of a

pasteboard box on the floor of the hallway. The hole could not be seen by reason of the box. It has been held upon good authority that a storekeeper who places racks of merchandise about a railing around a stairway to a basement so as to obstruct the view of customers is negligent. (*Rogers v. Penny Co.*, 127 Neb. 885, 257 N. W. 252; *Haley v. Deer*, 135 Neb. 459, 464, 282 N. W. 389.) See, also, *Gibeson v. Skidmore*, 99 N. J. L. 131, 122· Atl. 747. There was not sufficient room between the box and the east wall to pass around the box. Appellant stepped over the box "very easily" and in doing so stepped into the hole, broke his right arm and possibly sustained some other injuries. The pasteboard box was variously described as 20 inches in height, 16 to 18 inches in height, and approximately 14 to 16 inches wide. In the case of *Bass v. Hunt*, 151 Kan. 740, 100 P. 2d 696, the trial court sustained a demurrer to plaintiff's evidence in a case very similar in principle. This court reversed the ruling, and held:

"It is the duty of a *restaurant keeper* to keep in a reasonably safe condition the portions of his establishment where his guests *may be expected to come and go,* including a necessary water closet *and the passage thereto,* and it cannot be said as a matter of law there was no actionable negligence in his failure to sufficiently light the passageway or to warn a guest of an unguarded stairway covered by a trap door which was not closed." (Syl. ¶ 1.) (Emphasis supplied.)

We are unable to distinguish the Bass case from the instant case, in principle. In the Bass case plaintiff was not familiar with the passageway to the toilet and was advised by the lessee concerning the route to take in order to find it. In the instant case no directions were necessary. Appellant knew the route. The passageway in the Bass case, as in the instant case, was dark. The lessee in the Bass case did not know of the opening in the floor. Lessee in the instant case did know of the danger. He had been expressly warned concerning it. He did nothing about it. While the lessee in the Bass case did not know of the danger we, nevertheless, held it was his duty to keep the passageway to the water closet, where his guests might be expected to go, in reasonably safe condition. In the instant case the lessee knew the toilet was used by everybody.· We further held, in the Bass case, we could not say, as a matter of law, there was no actionable negligence in lessee's failure to sufficiently light the passageway or to warn a guest of the dangerous condition. The statutory duty of the operator of a

restaurant toward an invitee, and the duty of other business concerns toward invitees, was thoroughly treated in the Bass case. We do not deem it necessary to again review the various authorities. An instructive and carefully reasoned case pertaining to the duties of due care to an invited guest, including users of toilets, may be added to the cases reviewed in the Bass opinion. It is the case of *Haley v. Deer*, 135 Neb. 459, 282 N. W. 389. While the Haley case itself is not cited as being directly in point with the instant case, some of the decisions reviewed in the opinion are in point. See, also, exhaustive annotation in 100 A. L. R. 710.

Was appellant guilty of contributory negligence which bars his recovery as a matter of law? Lessee says he was. Lessee contends the dark hall in itself constituted a warning. In the Bass case plaintiff followed the course prescribed and we said he was not guilty of contributory negligence, as a matter of law, because he did not take the additional precautions which it might be argued he could have taken. (See, also, *Donaldson v. Kemper*, 149 Kan. 330, 333, 87 P. 2d 535.) Touching the subject of darkness, it must be remembered appellant in the instant case did not embark upon an uncharted course. He had used this same hallway on numerous occasions. It was the only direct route to the toilet from the front of lessee's place of business. There is no evidence it had ever before been in other than good condition. Appellant had a right to assume the restaurant operator had performed his statutory duty in maintaining a reasonably safe hallway to the toilet. Appellant was not obliged to anticipate lessee had unlawfully left an open hole in an unlighted and narrow passageway. Appellant had the right to assume if the hallway was not in a reasonably safe condition warning signs would be erected to apprise him of the lurking danger or that he would have been otherwise notified concerning it.

The lessee also contends the pasteboard box constituted a warning and appellant was guilty of contributory negligence in stepping over it. There was not room, or at least not sufficient room, to conveniently pass between the box and the east wall. Certainly we cannot say, as a matter of law, appellant should have interpreted the existence of a pasteboard box of the size mentioned, in view of other circumstances, as constituting a barricade to an open hole in the floor immediately on the other side of the box. Nor is there any evidence in the record the box was intended to constitute a barricade. Appellant saw the porter with a broom. Trash was being swept

into the hallway. That was the custom on Sundays. Can we say, as a matter of law, it was unreasonable for appellant to believe the pasteboard box was being used as a receptacle for trash which was being swept, or otherwise placed, into the hallway? Manifestly we cannot. Well, that is exactly what the evidence discloses appellant did think was the purpose of the box. In *Jones v. McCullough,* 148 Kan. 561, 83 P. 2d 669, the long established rule was again asserted to be:

"In determining whether a plaintiff is guilty of contributory negligence, when tested by demurrer or on motion for a directed verdict, the question must be submitted to the jury if the facts are such that reasonable minds might reach different conclusions thereon." (Syl. ¶ 2.)

The rule touching proximate cause was well stated in *Durst v. Wareham,* 132 Kan. 785, 297 Pac. 675, in which it was held:

"The question of whether a negligent act is the proximate cause of an injury and whether an ordinary, reasonable, prudent man would have foreseen that injury might occur as a result of a negligent act is a question of fact for the jury." (Syl. ¶ 4.)

See, also, *Jones v. McCullough,* supra, and *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 53 P. 2d 923.

Does the record disclose actionable negligence on the part of the defendants, the owner of the building or the manager of the building? It is conceded if either of them is liable the other is liable. For convenience we shall therefore refer to them as the landlord. The latter lodged a general demurrer to appellant's evidence, which was sustained.

The issue is narrowed materially by reason of appellant's concession. He concedes a landlord ordinarily is not liable to invitees of a business concern by reason of defects within leased premises where the property was in safe condition of repair at the time the lessee entered, and where the particular portion of the building involved is in the possession, supervision and control of the lessee. (For statement of general rule and exceptions, see Woodfall's Law of Landlord and Tenant, 20th ed., p. 882; *Wilson v. Dowtin,* 215 N. C. 547, 550, 2 S. E. 2d 576.) This concession eliminates from our consideration numerous cases. The hallway to the toilet and the toilet were both within the leased premises.

Appellant's contention, however, is that the landlord made the repairs, and that where a landlord undertakes to make repairs he is liable for injuries sustained by reason of his negligence. The con-

tention presents first a factual question. The landlord denies he made any repairs. There is nothing in the record which indicates it was the landlord's duty to make repairs. The terms of the lease, whether written or oral, do not appear.

Did the landlord voluntarily make repairs? There is no evidence in the instant record that the landlord made repairs voluntarily or otherwise. We have carefully examined the record and fail to find any evidence which would justify a conclusion that the landlord was actually to be in charge of making the repairs when, and if, they were in fact made. The record discloses the owner had a manager of the building. Just what his exact duties were does not appear. It does appear there had been a leak in the plumbing and that the ground underneath the floor was wet and muddy. The lessee, not the landlord or his manager, had some plumbers working there on Saturday, the day before the accident. Appellant, on Saturday, had some conversation with Mr. Black, the manager of the building, concerning the subject of reënforcing the floor. Black had a carpenter inspect the condition under the floor. The carpenter reported it was then too wet for such work. The lessee suggested the trap door be left open for ventilation. Black and the carpenter agreed the suggestion was a good one. When the carpenter left he reminded the lessee of the suggestion the lessee had formerly made. Concerning the trap door the testimony is positive that Black did not say how long it was to be left open, nor when it was to be left open, nor how it was to be left open. So far as the instant record discloses, that was the end of Black's, or of his carpenter's, connection with the subject of repairs. The record is silent concerning the subject of who was in charge of the repairs when they were eventually made, if ever.

There is no allegation in the petition that lessee was the landlord's agent in making any repairs, or in leaving the trap door open. The negligence pleaded against the landlord narrows down to the charge that the trap door was left open *in a dimly or insufficiently lighted hallway* and to the charge that the landlord *failed to warn* the guests of the lessee. There is no contention the hallway had not been properly equipped with an electric light. This light was lighted earlier in the morning. There is no evidence which would remotely indicate the landlord had any reason to suspect the lessee would not keep lighted the electric light which had been provided.

Appellant further insists the landlord is liable because he con-

sented to have the trap door left open. It is difficult to understand how that bare consent added anything to the rights which the lessee had without such consent. It was lessee's own suggestion. Trap doors are common contrivances in buildings. The lessee had just as much right to open the trap door for ventilation on premises under his control, without the consent of the landlord, as he had with such consent. Moreover, there is nothing in the record which indicates the landlord authorized lessee to leave the trap door open without providing the necessary safeguards or warnings. The landlord was not obliged to assume lessee would leave the hallway, over which lessee had control, in a dangerous condition. At any rate, the landlord's consent cannot be stretched into authorization to darken the hallway and to leave the trap door open and improperly guarded. The real trouble arose from lessee's failure to keep the hallway lighted, or to erect a proper barricade. The opening of a trap door, in order to obtain ventilation, does not, in and of itself, constitute negligence. It is generally held the mere consent of a landlord to a tenant to do a lawful act upon leased premises is not consent to do the act negligently or unlawfully. (*Zolezzi· v. Bruce-Brown*, 243 N.·Y. 490, 154 N. E. 535; *Taylor v. Loring*, 201 Mass. 283, 87 N. E. 469; *Reynolds v. King*, 132 N. Y. S. 273; *Arnold v. Dlugo*, 110 N. J. L. 89, 164 Atl. 320.)

Furthermore, according to the weight of authority, which we regard as sound, a landlord is not liable where, as in the instant case, an intervening act or acts of the tenant over which the landlord had no control constitute the procuring cause of the injury. (*Kallenbach v. Manne*, 138 Kan. 797, 799, 28 P. 2d 746.)

The order sustaining the demurrers of the landlord and the manager of the building is affirmed; the order sustaining the demurrer of the lessee is reversed.