No. 35,102

HENRY R. BUGG, *Appellee*, v. THE SECURITY BENEFIT ASSOCIATION, THE SECURITY BENEFIT HOME AND HOSPITAL ASSOCIATION, and DR. A. C. SCHOCH, *Appellants.*

(112 P. 2d 73)

Opinion filed April 12, 1941.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell, A. W. Fulton* and *Harry L. Ladbury,* all of Topeka, for the appellants.

*Thomas Amory Lee,* of Topeka, and *Kenneth C. Larkey,* of Memphis, Tenn., for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the husband of a member of The Security Benefit Association and former patient at The Security Benefit Home and Hospital Association, to recover moneys which it was alleged he was required to expend by reason of wrongful diagnosis and treatment of his wife by the corporate defendants and their agent, physician and surgeon, Dr. A. C. Schoch. Separate general demurrers of the corporate defendants and the defendant doctor to the petition of plaintiff were overruled, and from that ruling defendants appeal.

The petition contained in substance the following averments: Plaintiff's wife had for sometime been a member of The Security Benefit Association, a fraternal benefit or insurance society incorporated under the laws of this state, with its principal office and hospital located at Topeka. The Security Benefit Home and Hospital Association was a corporate affiliate of the defendant insurance association and functioned and served as an agent and instrumentality of the insurance association. The two corporations functioned and operated as a unit and as an integral part of the same common plan and purpose. The defendant, Dr. A. C. Schoch, was a resident physician and surgeon of the hospital association, a salaried member of the hospital staff, and not an independent practitioner.

As a member of the insurance association, plaintiff's wife was entitled to the rights and privileges of diagnosis and treatment in the hospital association. On April 4, 1938, his wife entered the hospital conducted by the corporate defendants and placed herself under the care of the individual defendant, Dr. A. C. Schoch, for treatment of a small lump or growth in her left breast, and particularly for a diagnosis of the same in order to determine whether it was cancerous. The doctor made an incision into the left breast on April 5, at a place near the lump, although not in or upon it, and took from it a piece of tissue. The patient remained in the hospital until April 10, when she returned to her home at Willard, Mo.

The petition further alleged:

III. "On the 4th day of April, 1938, the wife of the plaintiff entered as a patient the hospital conducted by the two corporate defendants, and placed herself under the care of the defendant, Dr. A. C. Schoch, for treatment of a small lump or growth in her left breast and particularly for a diagnosis of the same to determine if it were cancerous. The defendant, Dr. A. C. Schoch, made an incision into the left breast of the wife of the plaintiff on the 5th day

of April at a place near the said lump or growth, although not in or upon it, and took therefrom a piece of tissue. The wife of the plaintiff at the time called to Doctor Schoch's attention the fact that the tissue was not·taken at the place of the growth and was not a part of the growth. Thereafter, the wife of the plaintiff remained at the hospital until April 10, 1938, when her wound was sufficiently healed for her to go to her home at Willard, Mo. In the meantime, both she and the plaintiff had anxiously inquired for the diagnosis or the nature of the tissue removed but had received no information. On April 20, 1938, the wife of the plaintiff received a letter from the defendants, dated April 16, 1938, and signed by Doctor Schoch, stating among other things 'my microscope tells me the breast should be removed' but not stating whether the tissue removed was found to be cancerous. Thereupon, the wife of the plaintiff made telegraphic inquiry and was advised that the tissue was cancerous.

IV. "The wife of the plaintiff then went immediately to the Mayo Clinic at Rochester, Minn., informed the head of the Mayo Clinic Department of Surgery of the history of the case, including the diagnosis made by the defendants, and, on the strength of the said diagnosis, was immediately operated upon by the said surgeon. Her left breast was entirely removed, as well as the lymph glands under her left arm, without further diagnosis. The growth was not a malignant one, the wife of the plaintiff had no cancer, and the diagnosis of the defendant was an incorrect one."

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

VI. "The city of Topeka, Kan., has a population of approximately 70,-000, is a thriving, modern city and a medical center where the standards of hospitals and practice of medicine are high and in accordance with the most advanced standards of both, and in which are located several large hospitals, numerous capable physicians, surgeons, pathologists, and diagnosticians whose skill and standards of practice of hospitalization and medicine are approved by the medical profession in the advanced centers of medical science. Under modern standards of medical practice generally approved by the medical profession in and around Topeka and other advanced medical centers, the proper course of treatment for the defendants to have given to the wife of the plaintiff would have been to remove from her breast the entire lump or growth, to have an immediate examination of the said tissue by an expert pathologist and a report upon the same within less than an hour, to permit the wound to heal if noncancerous, and to perform immediately the so-called radical operation and remove the entire left breast and lymph glands under the arm on the left side if found to be cancerous.

VII. "The defendant Schoch did not exercise the degree of skill and learning ordinarily possessed and exercised under similar circumstances by members of his profession in good standing, did not use ordinary and reasonable care and diligence in his treatment of the case, and did not follow the approved procedure and proper course of treatment generally recognized in and around Topeka in his medical and surgical attentions to the wife of the plaintiff.

"The plaintiff specifically charges that the defendants and each of them unless otherwise noted were negligent in the following particulars:

"(1) The failure of the defendants to employ a trained and skilled pathologist to examine and report upon the tissue taken.

"(2) The failure of the defendants to make any report at all for a period of two weeks upon the tissue taken.

"(3) The failure of the defendants to remove the questionable growth from the breast of the wife of the plaintiff.

"(4) The failure of the defendants to maintain in good repair the apparatus necessary for a diagnosis of this questionable growth.

"(5) The incorrect diagnosis of the tissue by the defendants as cancerous.

"(6) The adoption by the defendants of a method of diagnosis not generally approved by the medical profession in and around Topeka.

"(7) The adoption by the defendants of a method of treatment not generally approved by the medical profession in and around Topeka, and failure of the defendants to adopt the approved procedure and methods in such cases, to wit: by removing from the breast of the wife of the plaintiff the entire lump or growth; having an immediate examination and report within a few minutes, or an hour at the latest, by an expert pathologist of the tissue removed; a correct diagnosis upon examination of such tissue, and in the event that the growth was found to be malignant, the immediate removal of the entire left breast and lymph glands under the left arm on account of the great speed with which cancer cells spread through the lymphatic system when there has been an incision into cancerous matter; or in the event that the diagnosis shows that the growth was noncancerous, permitting the wound to heal without further operation.

"(8) The failure of the defendants to maintain their hospital upon such a basis as to be approved by the American College of Surgeons; the maintenance of the hospital in such a manner as to cause its removal from the registry of the American Medical Association in 1938, and its ineligibility for registration by the said association.

"(9) The employment and retention by the corporate defendants of the defendant, Dr. A. C. Schoch, as a pathologist when he was not competent to be one, did not possess and exercise the skill and training ordinarily possessed and exercised by pathologists in good standing; the employment and retention by the corporate defendants of the defendant, Doctor Schoch to diagnose and treat growths believed to be cancerous when he either did not know the methods approved generally by the medical profession in and around the city of Topeka and in similar medical and surgical centers for diagnosis and treatment of growths thought to be cancerous, or if he did know the methods generally approved by his profession, did not use ordinary and reasonable care and diligence and his best judgment in the application of his skill to the case; and the failure of the corporate defendants to use reasonable care in the selection and employment and retention of the defendant, Doctor Schoch, as a medical and surgical employee of the hospital. The corporate defendants by the exercise of reasonable care could have ascertained that the defendant Doctor Schoch was not competent to act as a pathologist to diagnose and treat such cases as that of the wife of the plaintiff herein, and to employ the medical methods generally recognized as being approved by the medical profession in and around Topeka and other medical and surgical centers of high standing.

VIII. "The damages suffered by the wife of the plaintiff are the direct and proximate result of the negligence of the defendants heretofore specified, for the reason that such negligence compelled an immediate operation by the Mayo Clinic without waiting to make a diagnosis of their own, because of the great danger resulting from the extremely rapid spread of cancerous cells through the lymphatic system upon the incision into and removal of malignant growth. The operation at the Mayo Clinic more than two weeks after the incision had been made by the defendants, was deemed necessary at the earliest possible minute on account of the diagnosis by the defendants (later found to be incorrect) of the growth as cancerous and the extreme danger of acceleration of the spread of cancer. The tissue removed by the defendants from the left breast of the wife of the plaintiff was not cancerous and no cancer has ever been shown to have existed or to have developed in the wife of the plaintiff.

IX. "As the direct and proximate result of the negligence of the defendants heretofore set forth, the plaintiff has been obliged to lose considerable time from his business and occupation, and has been obliged to expend large sums of money for medicines, nurses, doctors, hospital fees, physiotherapy treatments, X-ray and infra-red treatments and other items incident thereto for his wife, and furthermore, to expend considerable sums of money in traveling expenses, both for himself and for his wife, in going to and from both Topeka and Mayo's Clinic in Rochester, Minn., an itemized statement of which will be submitted to the defendants upon request."

In addition to the injuries to the person of the plaintiff, which injuries we need not note in this action, the petition set forth the items of damage which plaintiff claimed. They were such items as money expended for medicines, nurses, doctors, hospital fees, treatments, traveling expenses incurred by him and his wife in going to and from Topeka and Mayo's clinic at Rochester, Minn., and loss of time from his own business and occupation, in the total sum of $2,250.

The petition was in nowise motioned by defendants. Since the demurrers were all general in character, we need not determine whether specific items of damage are recoverable. If any item of damage is recoverable the demurrers were, of course, properly overruled. In passing we may, however, note that expenses incurred prior to diagnosis or treatment in the hospital at Topeka, could not possibly be the proximate result of diagnosis or treatment.

While defendants make several contentions they argree the principal question presented is whether the alleged wrongful diagnosis was the proximate cause of the expenses incurred. Both plaintiff and defendant concede the issue is one of first impression in this state and that their research has disclosed no case squarely in point from any other jurisdiction.

It is well established that generally a physician or surgeon is not liable for an honest error or mistake in diagnosis without treatment.

(*Taylor v. Shuffield,* [Tex. Civ. App.] 52 S. W. 2d 788, 793; *Dishman v. Northern Pac. Ben. Ass'n,* 96 Wash. 182, 201, 164 Pac. 943; 48 C. J., §113, pp. 1126, 1127.)

Does the petition disclose any treatment of the patient? All averments touching that subject are found in paragraph III. The petition pleads no treatment unless procedure incident to the making of the diagnosis alone constitutes treatment. We are advised of no authorities which hold that such practice constitutes treatment in the proper sense of the term. The services of the defendant doctor ended with diagnosis. Whatever plaintiff's wife did thereafter constituted a voluntary act of her own and must be held to have been performed solely on her own initiative. We think the diagnosis was not the proximate cause of the damages sought to be recovered.

Defendant further contends if anyone is liable in the instant action, it is the Mayo clinic, for negligence in operating without first making its own independent diagnosis. Defendants also claim paragraph VII (7) of the petition contains facts which disclose the Mayo clinic was negligent in failing to make its own diagnosis prior to operation. With the latter contention we cannot agree. At least one of the difficulties with that argument is the petition does not disclose that facts stated in paragraph VII (7) occurred prior to the date of the operation at the Mayo clinic.

In any event, defendants urge the proximate cause of the damage was the intervention of an independent and intelligent third party, namely, Mayo's clinic, which performed the operation. For the purpose of this lawsuit it will suffice to say that in our opinion the wrongful diagnosis was not the proximate cause of the damage claimed. Since under the averments of the petition, the defendant doctor was not liable, it of course follows the defendant corporations are not liable. The action is reversed and the cause remanded with directions to sustain the demurrers.

WEDELL, J. (dissenting): This was not a trial on the merits. On the trial plaintiff may not be able to prove what the petition alleges. That, however, is not the issue now. The only question before us now is whether plaintiff has a cause of action, assuming he can prove what he has alleged. For the purpose of the demurrer defendants admitted as true every fact properly pleaded.

It is, of course, elementary that a physician or surgeon ordinarily is not liable in damages for an honest error in mistake in judgment.

That fact, however, does not relieve him from the duty of exercising reasonable care and skill in making a diagnosis which must form the basis of his judgment. (*Manser v. Collins;* 69 Kan. 290, 76 Pac. 851; *James v. Grigsby,* 114 Kan. 627, 632, 220 Pac. 267; *Riggs v. Gouldner,* 150 Kan. 727, 728, 96 P. 2d 694; *Dishman v. Northern Pac. Ben. Ass'n,* 96 Wash. 182, 164 Pac. 943; 21 R. C. L., § 33, pp. 387, 388; 48 C. J., §§ 113, 114,·pp. 1125-1128.) For the purpose of the demurrer it was admitted the patient did not have cancer and that the diagnosis was negligently and carelessly made. The demurrer also admits the doctor did more than merely make a diagnosis. It expressly admits he also advised his patient what she should do about it. That advice was that she should have her breast removed. It admits that in obedience to his advice she had it removed when the tissue in fact was not cancerous. Some of the items of expense for which recovery is sought are expenses incurred in getting done exactly what her doctor advised her to have done. I therefore have difficulty in saying as a matter of law that her doctor's diagnosis, combined with his advice as to what she should do about it, were not the proximate or legal cause of some expenses incurred.

I further find myself unable to say as a matter of law that her doctor could not reasonably anticipate she would follow his advice. To say he could not reasonably anticipate she would follow his advice is tantamount to saying that a patient would not and should not have confidence in the advice of the physician of her own choosing.

The demurrer also admits it was imperative that the operation be performed by the Mayo clinic at once and without the delay which would be occasioned by an independent diagnosis by the Mayo clinic. That statement is somewhat difficult for me to believe, but it is not my province to believe or disbelieve it. That is the proper province of a jury and not of the courts. For the purpose of the demurrer, the truth of the statment is now admitted.

In view of the various admissions on demurrer, whose province is it to determine the proximate cause of the damages claimed? In *Durst v. Wareham,* 132 Kan. 785, 297 Pac. 675, we held:

"The question of whether a negligent act is the proximate cause of an injury and whether an ordinary, reasonable, prudent man would have foreseen that injury might occur as a result of a negligent act is a question of fact for the jury." (Syl. ¶ 4.)

(See, also, *Hill v. Southern Kansas Stage Lines Co.*, 143 Kan. 44, 52, 53 P. 2d 923; *Jones v. McCullough*, 148 Kan. 561, 566, 83 P. 2d 669; *Campbell v. Weathers*, 153 Kan. 316, 111 P. 2d 72.) So, too, the question of proximate cause is held to be a jury question where an intervening efficient cause is involved unless courts can say as a matter of law that minds could not reasonably reach different conclusions touching the subject of proximate cause. (22 R. C. L., Proximate Cause, §§ 31, 32; *Railway Co. v. Parry*, 67 Kan. 515, 73 Pac. 105; *Filson v. Express Co.*, 84 Kan. 614, 618, 114 Pac. 863; *Clark v. Powder Co.*, 94 Kan. 268, 276-278, 146 Pac. 320.)

Defendants argue if anyone is liable in the instant case it is the Mayo clinic, which was employed to perform the operation. We are concerned with the liability of parties defendant in the instant case and not with the liability of the Mayo clinic. Assuming, without deciding, that the Mayo clinic was also negligent, how could that fact relieve defendants from liability. In *Berry v. Shell Petroleum Co.*, 141 Kan. 6, 40 P. 2d 359, it was said:

"On the subject of legal consequences of misconduct, the general rule is stated in Harper on Torts (sec. 119, p. 270), as follows: 'The rule may be generalized, that where harmful consequences are brought about by intervening and independent forces the operation of which might have been reasonably foreseen, there will be no break in the chain of causation of such a character as to relieve the actor from liability. The source of the intervening agency is immaterial, whether from nature, animate or inanimate, or from human beings.' (Citing *Meecke v. Morguies*, 128 Kan. 423.)" (p. 7.)

See, also, Restatement, Torts, § 439; *Tilden v. Ash*, 145 Kan. 909, 916-918, 67 P. 2d 614.

I think the trial court properly overruled the demurrers to the petition.

SMITH and HOCH, JJ., join in the dissent.