JUDITH SHEILA LIPPMAN, BY HER GUARDIAN *AD LITEM*, AND BENJAMIN M. LIPPMAN AND EVA LIPPMAN, PLAINTIFFS-RESPONDENTS, v. ALFRED C. OSTRUM AND KITTATINNY LODGE, INC., A BODY CORPORATE, DEFENDANTS-RESPONDENTS.

JOAN CAROL DAVIDSON, BY HER GUARDIAN *AD LITEM*, AND LOUIS E. DAVIDSON AND PEARL DAVIDSON, PLAINTIFFS-APPELLANTS, v. ALFRED C. OSTRUM AND KITTATINNY LODGE, INC., A BODY CORPORATE, DEFENDANTS-RESPONDENTS.

Argued April 30, 1956—Decided June 13, 1956.

16

Mr. *Maurice C. Brigadier* argued the cause for appellants (*Mr. Seymour Margulies,* on the brief; *Messrs. Adler & Adler,* attorneys).

Mr. *George F. Losche* argued the cause for respondent Alfred C. Ostrum (*Mr. Charles C. Shenier,* attorney).

Mr. *James B. Emory* argued the cause for respondent Kittatinny Lodge, Inc. (*Mr. Charles W. Broadhurst* and *Mr. James J. Langan,* on the brief; *Messrs. Emory, Langan, Lamb & Blake,* attorneys).

The opinion of the court was delivered by

HEHER, J. The infant plaintiffs seek redress for personal injuries suffered August 17, 1953, allegedly in consequence of the negligent operation by the defendant Ostrum of his own automobile in the service of his codefendant, Kittatinny Lodge, Inc., by whom he was employed as a counsellor at the Lodge's summer camp in Sussex County, New Jersey. The parents sue *per quod* for medical expenses incurred in the treatment of the infants' injuries and for the loss of their services.

The infant plaintiffs were also camp counsellors in the employ of the Lodge. Ostrum was the camp's "dramatics counsellor"; and on the day of the mishap he undertook

a trip by automobile from the camp to Port Jervis, New York, to obtain paint for a camp dramatics performance planned for the following week. They joined him for the trip, but not on an errand for the camp. On the way the automobile, driven by Ostrum, ran off the road and struck a tree, causing serious injury to the girls, occupants of the rear seat of the vehicle. Sitting with Ostrum on the front seat was one Weingrad, a member of the camp orchestra, on his way to purchase a new reed for his saxophone. A question mooted at the trial concerned the status of the infant passengers. Had Ostrum "invited" the girls to accompany him, or had they "solicited the ride"? There is no doubt the girls were recreation bent on their "day off." They were not then serving either the Lodge or Ostrum. It was contended at the trial that the Lodge had given instructions that all camp counsellors "having a car at camp" should when "going into town on their day off offer a ride to anyone who wanted a ride," to any of the camp personnel "who were unable to get out of camp any other way." The giving of such instruction was denied by the officers of the Lodge and other camp counsellors. Negligence in the operation of the automobile was denied.

Judge Proctor, in a charge that evoked no exception, submitted to the jury the litigated issues of negligence and agency. He ruled there was no evidence of contributory negligence or assumption of risk. He drew the distinction between "invitation" and "license," and directed that if the infant plaintiffs were found to have been "mere licensees," damages could not be had "because there is no evidence in this case of any wantonness or willfulness on the part of Mr. Ostrum." And he defined the duty of reasonable care owing to the infants if they were in the car by invitation. The charge continued: "Was Ostrum along with other counsellors who owned cars at the camp directed by the camp officials to carry counsellors who did not own cars when they desired to leave the camp on their days off?" If that issue were resolved in the affirmative, it was said, "then under the doctrine of *respondeat superior* (that is

a Latin term which means 'let the master respond') the camp would be responsible for the negligence, if any, of Ostrum, the owner-driver of the car"; if such were the case, "and in pursuance thereto Ostrum, in behalf of the camp, invited or permitted the plaintiffs to ride in the car, the camp would be responsible under this doctrine of *respondeat superior*, that is, let the master respond, for the negligence, if any, of Ostrum, and also Ostrum would be liable for his negligence if it was the proximate cause of the accident." And if the infants were in the vehicle at the invitation of Ostrum, not acting in that behalf for the camp, "if Ostrum asked the girls to ride, that is, invited them into his car, then he owed them the duty of using reasonable care in the operation of his car, that is, that he owed them the duty not to be negligent in the operation of his car"; but "if the plaintiffs asked Ostrum for the ride and he was not acting pursuant to any direction, then you must find in favor of the camp and also in favor of Ostrum; for the law is that where one asks another for a ride and the driver merely acquiesces or permits them to ride, then the driver is not responsible for any injuries they sustain under the evidence in this case."

At its conclusion plaintiffs' counsel informed the court that he was "satisfied with the charge," following an inquiry as to whether the substance of the requests had been charged.

The jury returned a verdict for both defendants against all the plaintiffs. Plaintiffs did not move for a new trial.

The Appellate Division affirmed the judgments. Error was there assigned upon (a) the denial of plaintiffs' motion to strike the affirmative defenses of contributory negligence and assumption of risk, and (b) certain rulings on evidence, not related to the rule of liability laid down in the charge. It was not contended that the verdict was against the weight of the evidence.

The case is here by our certification at the instance of plaintiffs.

█ It is urged *in limine* that an "automobile passenger or guest may recover against the driver if the negligent con-

duct of the driver in the operation of the car causes injury to the passenger or guest," this without more.

What is sought in an earnest and thoughtful presentation is the overthrow of the firmly-established rule of liability to redress in damages a civil injury or wrong attending such a relationship. It is said that historically "automobile guests were treated by common law in a manner analogous to licensees who enter upon the land of another," and though the "business invitee who came upon the property of another was owed a duty of care, not so the social invitee, licensee or trespasser who were all treated in the same class and to whom the landowner normally owed no duty, except to refrain from intentional harms, the setting of hidden traps or the infliction of grossly negligent acts or conduct"; that "No distinction was ever drawn in our New Jersey law between the social and the business invitee in the automobile law as appears in the land law"; that "only the licensee or trespasser were treated analogous to the licensee who entered upon land," and the "social or business invitee in the vehicle was treated as the real property business invitee," and "in theory the licensee or guest who solicited an automobile ride was normally presumed to assume even the risks arising out of the failure of the operator of the vehicle to exercise reasonable care" in its operation, or such was the "effect of the rule, because the operator owed no affirmative duty of care to the licensee or guest who solicited a ride from the driver other than to refrain from the infliction of willful injury or undertaking a course of conduct constituting gross negligence," citing *Lutvin v. Dopkus,* 94 *N. J. L.* 64 (*Sup. Ct.* 1920); *Faggioni v. Weiss,* 99 *N. J. L.* 157 (*E. & A.* 1923), and so it is that New Jersey has not recognized the distinction made generally in this country, *i. e.,* a "distinction based upon whether an advantage flows to the host or not when the passenger is riding in the car," but rather considers "whether the passenger asked or was asked for the ride."

What is more important, it is affirmed, is that in New Jersey the "automobile guest, even though he be the licensee

or passenger who is a gratuitous rider," is not given "the benefit of the rule that the driver is under a duty to exercise reasonable care for his protection in the operation of the car"; and "In this we are far behind the times," and "the subject is now ripe for change." "Even the land law," it is suggested, "is in the process of change"; and "In the absence of legislation, the general rule, to which New Jersey is an exception, is that even a guest at sufferance is owed ordinary care by the driver," citing *Munson v. Rupker, 96 Ind. App.* 15, 148 *N. E.* 169 (*App. Ct.* 1925), affirmed on rehearing 96 *Ind. App.* 15, 151 *N. E.* 101 (*App. Ct.* 1926). The "minority rule," called the Massachusetts rule, is described as distinguishing "the degrees of care depending upon whether the ride is a gratuitous one for the sole benefit of the passenger or not," "predicated in part upon the same distinctions in duties of care as are found in the law of gratuitous bailments"; while in New Jersey, it is said, the "cases are almost unique in that they are predicated upon the licensee concept of real property law, and the driver's immunity for negligent operation is still granted on that theory," a rule that is "generally applied" elsewhere "only in those cases where alleged fault involves defects in the condition of the car rather than injury resulting from the operation of the car."

In fine, it is urged that there is "no realistic advantage in the 'gross negligence' rule in New Jersey automobile cases," and "liability should be predicated simply on negligence—as defined in *Restatement, Torts, section* 282 and in our cases," citing *Harpell v. Public Service Coordinated Transport,* 20 *N. J.* 309 (1956), at *pages* 316, 317. "The timeliness for a change in our New Jersey rule becomes evident," we are told, when consideration is given to the "tremendous increase in the number of motor vehicles on the road and the resulting problems in enforcement of motor vehicle laws and the procedures of litigation involving motor vehicles" which "have recently caused grave concern to both the courts and legislatures," a problem that gave rise in New Jersey "to the recent adoption of the financial responsibility statutes, in *Ch.* 6 of

*subtitle* 2 of *Title* 39 of the *Revised Statutes,* and in fact to a rather recent overhauling of the traffic regulations in *Ch.* 4 of *subtitle* 1." Continuing, it is argued that "Much has been written in recent years recognizing the changing social problems presented through the rapid growth of the number of motor vehicles in operation on the roads and the damage and death they cause," and "Even strict liability, *i. e.* liability without fault for automobile accidents, with or without some variation of a compulsory insurance plan is now quite prevalent on the continent of Europe," and "With increasing vigor such a concept is beginning to be advocated in this country," referring to *Prosser on Torts, 2d ed., section* 61, *n.* 80. The insistence is that "In the context of the foregoing problems it is clearly erroneous to leave in the automobile law the licensee-immunity concept which is a relic of the land law which grew out of the old feudal tenurial society," the "context in which the case at bar was tried."

We have set forth the argument thus at length to show that in essence it involves considerations of policy within the exclusive province of the lawmaking authority.

In *Lutvin v. Dopkus, supra,* the old Supreme Court laid it down, in 1919, that injured automobile passengers who "solicited" the owner of the vehicle, "as brother members" of a social organization, "for the use of his automobile to take them to * * * picnic grounds and return," for a "celebration" arranged by the organization, had as to the owner-operator of the vehicle the "legal status" of "licensees to whom the only legal obligation imposed is that of refraining from the perpetration of acts wantonly or wilfully injurious," citing *Phillips v. Library Company,* 55 *N. J. L.* 307 (*E. & A.* 1893); *Guinn v. Delaware and Atlantic Telephone Co.,* 72 *N. J. L.* 276 (*E. & A.* 1905); *Coyne v. Pennsylvania Railroad Co.,* 87 *N. J. L* 257 (*E. & A.* 1915); *Higgins v. Goerke-Krich Co.,* 91 *N. J. L.* 464 (*Sup. Ct.* 1918). Justice Minturn said:

"The act of the defendant in acceding to their request possessed none of the elements of a contract, and involved no element of invitation which can bring it within the rule of law applicable to

a passenger upon a railway train or a hired bus or to those cases of express or implied invitation upon which reliance is placed in the appellant's brief, and which involve as a consequence of the legal relationship thus established the application of the rule of due care."

And the principle was reiterated by the Court of Errors and Appeals, in 1923, in *Faggioni v. Weiss, supra,* where the injured plaintiff was also an infant. Justice Parker declared that "it is elementary that the owner and operator of a private conveyance who invites another to ride therein with him is thereby laid under the duty of reasonable care toward his guest," but that where, as in *Lutvin v. Dopkus, supra,* the injured plaintiffs "solicited a ride and defendant simply acceded to their request," they were licensees to whom the defendant owed no duty "except to abstain from acts wilfully injurious," and whatever may be the course of decision elsewhere, "our own cases have uniformly applied the rule of nonliability except for willful injury to licensees and trespassers, adults and infants alike." For this doctrine, recourse was had to the early case of *Vanderbeck v. Hendry,* 34 *N. J. L.* 467 (*Sup. Ct.* 1871) ; and to the turntable case of *Turess v. New York, Susquehanna and Western Railroad Co.,* 61 *N. J. L.* 314 (*Sup. Ct.* 1898) ; *Delaware, Lackawanna and Western Railroad Co. v. Reich,* 61 *N. J. L.* 635 (*E. & A.* 1898) ; and later cases applying the principle, including *Karas v. Burns Brothers,* 94 *N. J. L.* 59 (*Sup. Ct.* 1920), where the act of the driver of a coal wagon "in putting" the eight-year-old plaintiff on the vehicle was beyond the scope of his authority, and consequently imposed no duty of care on the defendants, whatever the duty of the driver may have been. See also *Zampella v. Fitzhenry,* 97 *N. J. L.* 517 (*E. & A.* 1922).

Such is the long-established rule in New Jersey, a natural and compelling juridical accommodation of a principle basic to our law of liability in damages for tortious wrongs in analogous relationships and circumstances, whether they concern land uses or other media of transportation involving the use of personal property, settled law amenable only to

the legislative power. Indeed, how could it be otherwise analogized, consistent with essential principle? Its rejection now, by this court, would constitute judicial intrusion upon the lawmaking function.

And it would seem from the tenor of the argument made that counsel for the infants all but concede as much. It is said that "in the absence of legislation," the general rule elsewhere, to which the New Jersey rule is an exception, is that reasonable care is the measure of duty to even a guest at sufferance. And it is shown that 27 of the 48 states of the Union have adopted "guest" statutes prescribing "gross negligence" or "wilful or wanton misconduct" as the standard of liability not only as to the occupant of an automobile who has solicited a ride, but as to one who has been invited to become a passenger. In this regard, Dean Prosser, in an excerpt from his work cited by appellants' counsel, says: "The rules as to licensees on land have been applied to those on personal property. At common law all but a few courts have treated a guest in a private automobile as analogous to a person entering by permission on the land of another. If he pays for the ride, or confers any benefit upon the host, he is the equivalent of an invitee, and is given the status of a passenger; but if he is a gratuitous rider he is nothing more than a licensee," yet as to such, it is said, the driver is under a duty to exercise reasonable care for the protection of the guest in his operation of the car, and to disclose to him any defects or dangers of which he has knowledge. But, the author continues, "A few jurisdictions, at common law, have proceeded upon a supposed analogy to the cases of gratuitous bailment of chattels, and have held that the driver is liable to the guest only for 'gross' or aggravated negligence," and now, in more than half of the states, the matter is governed by "automobile guest statutes, which have been enacted under the impetus of a feeling that the gratuitous guest is entitled to no claim against his host for the ordinary mishaps of modern traffic, and under the impetus of the claim of liability insurance companies that frequent collusion between host and guest has increased insurance rates." *Prosser,*

*Law of Torts* (*2d ed.*), 450 *et seq.* Such statutes are constitutionally sufficient. *Silver v. Silver,* 280 *U. S.* 117, 50 *S. Ct.* 57, 74 *L. Ed.* 221, 65 *A. L. R.* 939 (1929); *Kitchens v. Duffield,* 149 *Ohio St.* 500, 79 *N. E.* 2d 906 (*Sup. Ct.* 1948). The standard of duty is in varying terms: Where the automobile guest rides without giving compensation, there is no liability unless the driver's conduct is intentional, or "willful," "wanton," "reckless," "in disregard of the safety of others," "grossly negligent," or the like. *Prosser, Ibid.,* 452.

And three states which had judicially rejected the rule that obtains in New Jersey, as not well founded, *i. e.,* North Dakota, Indiana and Arkansas, have since adopted guest statutes, all subsequent to the disposition of the cases invoked by appellants, including the Indiana case of *Munson v. Rupker, supra.*

▮ The exclusion from the benefits of the *"Unsatisfied Claim and Judgment Fund Law,"* L. 1952, c. 174, *R. S.* 39:6–60; 39:6–70, of a claimant who was "at the time of the accident, a guest occupant riding in a motor vehicle owned or operated by the judgment debtor," or the personal representative of "such a guest occupant," is significant of legislative opposition as a matter of policy to the enlargement of the liability of the automobile owner to his car guests. See *Hutchison v. Ross,* 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007, 1017 (*Ct. App.* 1933). As elsewhere, legislative policy in New Jersey moves in the other direction.

But it is urged that the Lodge is "subject to liability for the negligence of the agent Ostrum while he was operating his vehicle regardless of whether" the Lodge "instructed Ostrum to transport the plaintiffs or not, and regardless of whether the plaintiffs were invitees or licensees of Ostrum."

The reasoning is that "at the time of the accident the driver was on a venture within the scope of his employment, namely, going to town to get paint for the dramatic production"; the camp "permitted the driving-counsellors to take others who wanted to leave the camp"; there were "no reasonable means of transportation between the camp site and

the neighboring municipalities and it could logically be argued that it was in the interest of the camp to accommodate the counsellors by seeking to make available to them the facilities of other counsellors who were driving to town"; and "no peculiar relationship of driver-guest that may have existed between the plaintiffs and Ostrum should benefit the principal," and "No public policy is thereby served." The insistence is that the "basis on which the entire doctrine of *respondeat superior* rests would justify a recovery against" the Lodge "so long as Mr. Ostrum, at the time of his negligent conduct, was not acting outside the scope of his employment," and there is no evidence tending to show the contrary. In short, it is contended that it "should make no practical difference to the right of the infant plaintiffs to recover whether they were in the car or out of the car (as if struck by the car while standing on the roadside), "let alone whether they were in the car as the result of having asked to go with Ostrum or Mr. Ostrum having asked that they go with him."

Acknowledging that it is the law of New Jersey that "an employer of a driver of an automobile is not subject to liability for the negligence of the driver in an action brought by a passenger if the employee, in inviting or permitting the person to ride with him, had no authority to so bind the master," the "rule utilized by the trial court in the case at bar," it is nevertheless insisted that "there is no basis in logic for the rule of exculpation nor is social policy served thereby," and "Since Ostrum was operating his own vehicle and the plaintiffs were injured while Ostrum was actually operating the vehicle within the scope of his authority, it should be of no consequence to the employer whether or not plaintiffs were Ostrum's invitees, or Ostrum's licensees or its own licensees," and the master should be held liable "to the passenger for ordinary negligence of the driver."

The ruling principle in New Jersey is elucidated in *Bilow v. Kaplan,* 11 *N. J. Misc.* 108 (*Sup. Ct.* 1933); and in *Kluber v. Pferdeort,* 15 *N. J. Misc.* 651 (*Sup. Ct.* 1937), affirmed 120 *N. J. L.* 190 (*E. & A.* 1938). The question

is whether the "invitation" to ride in the automobile was within the authority of the agent or servant driver; here, whether there was an invitation to ride in the vehicle extended by the Lodge to the infants, through its agent, Ostrum. This was the issue submitted to the jury in accordance with the plaintiffs' own conception of the rule of liability, under instructions deemed unexceptionable; and plaintiffs are now, on basic procedural principles, concluded by the verdict of the jury and the consequent judgment.

The principle deemed sound by legal scholars is thus stated in the *Restatement of the Law of Agency, section 242*:

"A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment."

The rationale of this rule of agency is that the employer may not justly be visited with the increased risk ensuing from the unauthorized invitation of his agent, a doctrine basic to our law.

Error is assigned upon the charge, primarily on the hypothesis that the "evidence was such that a jury question was presented as to whether or not Ostrum was operating his car wantonly or grossly negligently." There is also the general objection that the "entire charge, when read as a whole, is confusing."

But it was not confusing to appellants' able and experienced trial counsel. As we have seen, there was no exception to the instructions given nor the failure to instruct as requested; counsel voiced his satisfaction with the charge. The rules of court demand a timely objection, to the end that error be corrected. *R. R.* 4:52–1. This, in keeping with elementary justice. The charge conformed to the trial theory, which cannot be forsaken now, after an adverse result, for a new trial on a new and radically different basis of liability. *Harpell v. Public Service Coordinated Transport, supra; Domestic Fuel Co. v. American Petroleum Corpora-*

*tion*, 6 *N. J.* 538 (1951) ; *Beckmann v. Township of Teaneck*, 6 *N. J.* 530 (1951) ; *Roberts Electric, Inc., v. Foundations & Excavations, Inc.*, 5 *N. J.* 426 (1950).

■ And it was not error to rule against wanton or willful or grossly negligent conduct as a matter of law. There was no evidence to sustain the adverse inference. The proof in this regard was simply that the right rear tire "blew out" and then the car left the road on the right side and its right rear collided with a tree. The impact of the collision, the lack of control of the vehicle and the failure to apply the brakes "bespeak," it is urged, wanton or gross negligence and, at the very least, are factors giving rise to a question for the jury. But the roadway was wet and slippery from rain; and there is no evidence of excessive or reckless speed, or reckless indifference to consequences. See *Staub v. Public Service Railroad Co.*, 97 *N. J. L.* 297 (*E. & A.* 1922) ; *In re Lewis*, 11 *N. J.* 217 (1953). A finding of wanton or willful or grossly negligent acts or omissions would in the circumstances be purely speculative and conjectural.

■ And there was no prejudicial error in overruling the question put to the Lodge's president on cross-examination as to whether there were stockholders of the corporation other than himself: this, to show "interest and thereby attack his credibility."

It was clear that the witness had a substantial interest in the camp and its corporate operator; he testified that he had "operated" the camp since December 1946. The question was so remotely related to the inquiry that the ruling was plainly within the sound discretion of the trial judge.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and WACHENFELD—4.

*For reversal*—Justices JACOBS and BRENNAN—2.