46 N.J. Super. 323 (1957)
134 A.2d 749
MARTIN SNYDER, PLAINTIFF-APPELLANT,
v.
I. JAY REALTY CO., ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 4, 1957.
Decided September 23, 1957.
*325 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Bernard Chazen argued the cause for plaintiff-appellant (Mr. Theodore Schwartz, attorney; Mr. Nathan Baker, of counsel).
Mr. Milton A. Dauber argued the cause for defendant-respondent I. Jay Realty Co., the landlord (Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys; Mr. James P. Beggans, of counsel).
Mr. George W. Connell argued the cause for defendants-respondents Arnold Sachs, Isidore Sachs and T. Nulton Sachs, partners, t/a the New Jersey Knitwear Co. and New Jersey Knit Wear Co., a corporation, the alleged tenants (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action, to recover damages for personal injuries, was dismissed on the attorney's opening statement to the court and jury upon the ground that the statement did not disclose a cause of action. Plaintiff appeals.
These circumstances did however appear on the opening. The defendants were respectively the owner of a factory building and the tenants whose factory was located on the third floor of the premises. One night plaintiff went to the tenants' premises with his friend, Frank Sellick, a truckdriver employed by them. He apparently went there in the latter's truck, intending to stay on the premises with Sellick until Sellick had finished his work and then to go on with him upon a personal matter. Tenants' foreman, "who was there," told plaintiff to sit down and have a coke or just wait until Sellick got through. On other occasions Sellick *326 had brought people to the premises, and though the tenants knew of this, nothing had been said.
Sellick and another employee proceeded to load an elevator with cartons, and he then invited the plaintiff to go down with them on the elevator. The elevator shaft passed "through a driveway and a [loading] platform in the back," a part of the premises owned and apparently controlled by the landlord. When the elevator reached the platform, Sellick picked up a carton, and plaintiff did likewise, following the two employees as they walked off the elevator to load a truck (whether it was Sellick's truck does not appear); plaintiff's purpose was to help them load the truck. One leaving the elevator had to proceed along this platform, skirting a "trench" or opening, three feet deep, with no guard rail around it. On the night we are speaking of, it was somewhat dark. A socket or apparatus for an electric light bulb had been placed over the door, but it was rusted and "decayed," and for months there had been no light in the area. Plaintiff fell into the trench, while carrying the carton, thereby sustaining the injuries for which he brings this action.
The landlord knew that the tenants' factory was in operation sometimes 24 hours a day and that people "were using this place" (that is, apparently, the platform referred to); it "was a passageway which was used for people to walk in." Moreover, it appeared that Sellick himself had been hurt because of the failure to put a light there, and had complained to the tenants of the failure so to do.
We deal first with plaintiff's claim against the landlord. The landlord contends that plaintiff was merely its licensee and therefore under no duty to him, except with respect to traps and concealed dangers. But cf. Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957), as to the duty owed by a possessor of land to his licensee.
The landlord has not, we think, properly analyzed the relationships here. As the jury could have found, the tenants had, after plaintiff's arrival on the premises, indicated a willingness to have him enter those premises and remain *327 there until Sellick left. He was therefore their licensee. Restatement, Torts, § 330, comment (a), § 332, comment (h); Imre v. Riegel Paper Corp., 24 N.J. 438, 446 (1957); Harper and James, Torts, § 27.11 (1956). However, the landlord owed the tenants' licensee the full duty of reasonable care with respect to those common entryways and passageways, appurtenant to their leasehold, which the tenants were entitled to use and which the licensee might reasonably be expected to traverse. Stating it more broadly, the rule is this: a possessor of a multi-family dwelling house, an office building, a factory or other property, who leases a part and retains possession of common facilities, such as those referred to, is liable to the lessees' licensee for bodily harm caused the licensee by a dangerous condition upon the part retained, if the lessor in the exercise of reasonable care could have discovered the condition and the unreasonable risk involved and have made the condition safe. Restatement, Torts, § 360, and Illustration 1, dealing with the social guest of a tenant in an office building; Taylor v. N.J. Highway Authority, 22 N.J. 454, 461 (1956); Taneian v. Meghrigian, 15 N.J. 267, 277 (1954); Corrao v. West Jersey Corp., 13 N.J. Super. 342, 347 (App. Div. 1951); Higgins v. County Seat B. & L. Assn., 123 N.J.L. 116, 120 (Sup. Ct. 1939), dealing with an insufficient platform in an entryway; Shemin v. Steinberg, 117 N.J.L. 458 (Sup. Ct. 1937), referring to the duty of the landlord of an office building after hours; Guensch v. Third Presbyterian, etc., Newark, 109 N.J.L. 78, 81 (E. & A. 1932). As to the landlord's duty of inspection under the circumstances, see Stevenson, Negligence, § 509 (1954).
Accordingly, though the plaintiff is but a licensee of the lessees, he is constituted under the circumstances the invitee of the lessor. The rationale underlying this proposition is fairly obvious. The lessor, with respect to the retained premises referred to, is in the position of one who invites persons to enter upon his land for a business purpose of his own, and he extends this business invitation to all whom the lessees are willing to have enter the leased premises. Taneian *328 v. Meghrigian, 15 N.J. 267, 277 et seq. (1954); Prosser, Torts (2d ed. 1955), 471; Harper and James, Torts, §§ 27.12, 27.17 (1956); Restatement, Torts, § 332, comment (h).
The plaintiff then being the lessor's invitee, the question, to state it in terms of the familiar though rather artificial nomenclature, is, what was the scope of that invitation. Or, in other words  getting away from the terms invitee and scope of invitation  was the plaintiff within the class of persons whom the landlord might, in the exercise of ordinary prudence, anticipate as being subjected to an unreasonable risk of injury by the condition of the passageway above mentioned? Could the presence of this class of persons upon the passageway be reasonably said to be a part of the expected use of the premises? Prosser, Torts (2d ed. 1955), 472, 473; Restatement, Torts, § 360, comment (d); cf. Hussey v. Long Dock Railroad Co., 100 N.J.L. 380, 382 (E. & A. 1924). In his opening, plaintiff's attorney declared this "was a passageway which was used for people to walk in." It is quite true that we have no indication whatever as to how frequently it and the elevator may have been employed as a means of egress from the building by various persons  including the tenants' licensees. However a case should not be dismissed because of some factual deficiency in the opening, except where the deficiency is clear. Ross v. Orr, 3 N.J. 277, 284 (1949). An exit via the elevator and this passageway, even though it is located in the back of the building, may have been an easy means of egress from the upper floors and therefore a way which the landlord might reasonably anticipate would be made use of by persons such as a guest of a tenant's employee, in any event when leaving with the employee (as perhaps plaintiff was about to do). It cannot be said from the opening that there was any clear factual deficiency in plaintiff's case against the landlord.
We turn next to the more novel question raised by the claim against the tenants. We think tenants are under a duty to warn a licensee of theirs as to some condition to *329 which he may be subjected when leaving the leased premises via some entryway under the landlord's control, where it is reasonably foreseeable that the licensee will leave by that entryway and where, in the exercise of ordinary prudence, they should realize it will involve an unreasonable risk of harm to him. We do not go beyond the facts presented, and therefore need not deal with the duty, referred to in the oral argument, that might possibly devolve upon tenants with respect to the ingress of a licensee of theirs over that entryway. We therefore need not pass upon all aspects of the principle stated in the Restatement of Torts, § 360, comment (a), as follows:
"If the lessee knows that the common approaches to his apartment or office have been made dangerous for use by the lessor's failure to perform his duty to maintain them in safe condition, the lessee may thereby become subject to liability even to his gratuitous licensees if he fails to warn them of the danger involved in using the common approaches."
Cf. Guensch v. Third Presbyterian, etc., Newark, 109 N.J.L. 78, 82 (E. & A. 1932), dealing, however, with the liability of a tenant to its invitee who (the jury could have found) was invited by the tenant to use an elevator remaining in the landlord's control; Bass v. Hunt, 151 Kan. 740, 100 P.2d 696 (1940); Cannon v. S.S. Kresge Co., 233 Mo. App. 173, 188, 116 S.W.2d 559, 570 (1938). Cf., too, Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957), dealing, however, with the liability of an occupier of land to his licensee with respect to a condition on the very land occupied.
The principal question thus presented is whether it was reasonably foreseeable by a person in the lessees' position that the plaintiff would use the passageway leading from the elevator. For if this was reasonably foreseeable, then we think the opening raised a jury question as to whether the tenants should, in the exercise of ordinary prudence, have realized that the use of the passageway would involve an unreasonable risk to the plaintiff. Furthermore, we think it may be assumed for the purposes of this appeal that the *330 tenants gave no adequate warning to the plaintiff. We return, then, to the question stated. We do not know whether the tenants' foreman was called upon to supervise the loading of the elevator or whether in some other connection he should have realized that plaintiff was taking or would probably take the elevator down to the truck (which, as we say, may have been Sellick's truck) parked in the driveway, or whether his knowledge can properly be imputed to the tenants. We put little stress on the ambiguous statement in plaintiff's opening that the foreman was "there." And we choose not to speculate on the possibility that the tenants, quite apart from any knowledge the foreman had that the plaintiff would leave through the elevator, may be chargeable with notice that their licensees not uncommonly used this means of egress from the building; nor indeed do we need to consider the legal duty that might then devolve upon the tenants because of any such general notice.
However, even though the opening statement was most meager insofar as it may have attempted to charge the tenants with any knowledge or notice that the plaintiff would make use of the passageway referred to, nevertheless it cannot be said that there was so clear a factual deficiency on the point as to warrant a dismissal of the case on the opening. Much caution should be exercised by a court before disposing of a case finally at that juncture when the jury is already drawn and the witnesses are in court or are about to be called. As Judge (now Justice) Francis has said, there is very little in our practice to commend a dismissal at that posture of the case. Sherman v. Josephson, 44 N.J. Super. 419, 425 (App. Div. 1957).
Reversed, and new trial ordered.