MARTIN SNYDER, PLAINTIFF-RESPONDENT, v. I. JAY REALTY CO., AND ARNOLD SACHS, ISIDORE SACHS AND J. MILTON SACHS, PARTNERS TRADING AS NEW JERSEY KNITWEAR CO., AND NEW JERSEY KNITWEAR COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued May 18, 1959—Decided June 30, 1959.

*Mr. James P. Beggans* argued the cause for the defendant-appellant I. Jay Realty Company (*Messrs. Beggans and Keale,* attorneys; *Mr. Robert E. Tarlton* on the brief).

*Mr. George W. Connell* argued the cause for the defendants-appellants Arnold Sachs, Isidore Sachs and J. Milton Sachs, partners trading as New Jersey Knitwear Co., and New Jersey Knitwear Company, a corporation (*Messrs. Shaw, Pindar, McElroy, Connell & Foley,* attorneys; *Mr. William T. McElroy* on the brief).

*Mr. Bernard Chazen* argued the cause for the plaintiff-respondent (*Mr. Theodore Schwartz,* attorney; *Mr. Nathan Baker,* of counsel; *Mr. Bernard Chazen* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The plaintiff was injured as the result of a fall on a platform at the rear of a three-story factory building in Newark, owned by the defendant, I. Jay Realty Company. The defendants, Arnold Sachs, Isidore Sachs and J. Milton Sachs, partners trading as the New Jersey Knitwear Co., were engaged in the manufacture of sweaters. They occupied the third floor of the building and were one of several tenants. The New Jersey Knitwear Company, a corporate entity apart from the Knitwear partnership, was also named as a party defendant. The individual partners, the partnership entity and the corporation were considered by the parties as a unit and will hereinafter be referred to as the tenant.

Plaintiff brought an action against the owner and the tenant to recover damages for the injuries he sustained. When the case was first tried the trial court entered a judgment of involuntary dismissal as to both defendants on plaintiff's opening statement to the jury. The Appellate

Division reversed and ordered a new trial. 46 *N. J. Super.* 323 (1957). This court denied certification. 25 *N. J.* 316 (1957). At the retrial, upon the conclusion of the entire case the trial court entered a judgment of dismissal in favor of both defendants on the ground that the plaintiff was a trespasser at the time he sustained his injury and that there was no breach of any duty owed to him by either of the defendants. It further held as a matter of law that the plaintiff was contributorily negligent and that he had assumed the risk of any dangerous condition which may have existed. The Appellate Division reversed as to both defendants, holding that all issues should have been submitted to the jury. 53 *N. J. Super.* 336 (1958). We granted the defendants' petitions for certification. 29 *N. J.* 355 (1959).

Plaintiff was a friend of Frank Selleck, a truck driver employed by the defendant tenant. Selleck had been so employed for about eight or nine months before the accident. On April 6, 1953 the plaintiff met Selleck in New York City where the latter had completed his deliveries. Selleck suggested that the plaintiff ride back to the factory with him and that they would then return to New York on a personal matter. It was necessary for Selleck to go to the factory in order to turn in his receipts for the day and pick up some merchandise for delivery to Stirling, New Jersey, before he finished work. Plaintiff accompanied him. When they arrived at the factory premises at about 8 P. M. it was getting dark. Selleck parked his truck at the loading platform at the rear of the building. The two men then walked to the front and ascended the common stairway to the third floor occupied by the defendant tenant. This was the first time that the plaintiff had visited the tenant's place of business. Selleck introduced the plaintiff to several employees who were working that night. Morgan Batten was the tenant's acting foreman and "was in charge of the floor" that evening. While Selleck and Batten were loading some cartons on to an elevator at the rear of the building, plaintiff "browsed around," watched the other employees and had a

bottle of soda. None of the partners of the tenant was present. After about 20 minutes Selleck called the plaintiff and said, "We're ready to leave." Batten, Selleck and the plaintiff then entered the elevator and descended to the loading platform on the ground floor. It was now dark outside, and although there was a light in the elevator, it illuminated only the immediate area and the remainder of the L-shaped platform was "pitch black." Batten picked up a carton and started to walk down the platform toward the truck. He was followed by Selleck who also carried a carton. The plaintiff then picked up a carton and followed Selleck. The plaintiff testified:

"I followed his [Selleck's] figure and that was the way I had my direction, by following the figure. I had no idea of what was happening whatsoever.

Q. Then, did they make any turns, from what you observed? A. They may have. The way they walked, I walked. If they walked straight, I walked straight. If they made a turn, I made a turn.

Q. Then, what happened to you? A. Then I fell, I hadn't taken more than two steps.

Q. Then, what happened when you fell, describe it? A. I fell into this recess."

The recess into which plaintiff fell is about 40 inches deep and is formed by an open space between the platform and the building. It is at a right angle to the passage leading from the elevator and begins at a point five or six feet from the elevator door. There was no guard rail around the recess, and although there was provision for a light on the wall adjacent to it, the light was not in working order on the night of the accident, nor at any time during Selleck's employment. On a night about a month before the accident Selleck had fallen into the recess and had requested one of his employers, Arnold Sachs, to have the light repaired. At that time Sachs called the owner and complained about the absence of a light but apparently nothing was done.

No one was produced at the trial to testify for the defendant owner. The only witness called for the defendant tenant

was J. Milton Sachs, one of the partners. He testified that he had never authorized any of the employees to bring guests into the premises and that he had no knowledge that any of the employees had ever done so. He specifically denied any knowledge of the plaintiff's presence on the premises that evening. On cross-examination he testified that the factory was in operation day and night, and that the elevator was used or could be used "twenty-four hours a day" by all of the tenants in the building.

In the course of the direct examination of the witness Selleck, he was asked if he had ever brought any one else on the premises. The defendant tenant's objection to this question was sustained on the ground that any course of conduct on Selleck's part would not be binding upon the tenant. The witness had answered in the affirmative before the objection was interposed, and at the oral argument in this court plaintiff's counsel informed us that had he been permitted to pursue the matter Selleck would have testified that his wife and daughter had visited him at defendant tenant's premises.

The Appellate Division reversed the judgment of dismissal, holding that it was open to the jury to find that the plaintiff, a guest of an employee of defendant tenant, was a licensee of the tenant and as such was an invitee of the owner; that the owner owed the plaintiff a duty of reasonable care to maintain the passageway in a reasonably safe condition. As to the tenant the court held that the knowledge of plaintiff's presence by the tenant's foreman, Batten, was imputed to his employer, the tenant, and that if the tenant had the ability to foresee any unreasonable risk of harm to licensees "resulting from the lessor's failure to maintain the common approaches or exit-ways * * * the tenant, as any other possessor of land, must exercise reasonable care to make the condition reasonably safe or to warn the licensee of the risk." 53 *N. J. Super.* at *page* 344. It further held that the issues of contributory negligence and assumption of risk should have been submitted to the jury.

On this appeal the owner argues that the plaintiff's legal status on its premises was that of a trespasser and that its only duty to him was to refrain from acts willfully injurious; that it was under no duty to light the premises; that there was no evidence of defective construction or maintenance of the platform and that the plaintiff was aware of the condition. The tenant argues there was no evidence that the plaintiff was its licensee or that it breached any duty owing to him. Both the owner and the tenant urge that the plaintiff was "guilty of contributory negligence and assumption of risk as a matter of law." The plaintiff urges that the defendants' duty to him was to exercise "reasonable care under the circumstances." He contends this duty should be determined without regard to the "unrelated criteria dealing with the status of one who comes on the premises," citing 2 *Harper and James, Law of Torts,* § 27.1, *p.* 1432 (1956). *Cf. Kermarec v. Compagnie Generale Transatlantique,* 358 *U. S.* 625, 79 *S. Ct.* 406, 3 *L. Ed. 2d* 550 (1959), involving admiralty law.

In this state we have consistently adhered to the historically based view of the common law that the duty owed by an occupier of land to third persons coming thereon is determined according to the status of such third person, *i. e.,* invitee, licensee or trespasser. Indeed, the ascertainment of that status is an essential preliminary to the application of the particular standard of care to be exercised by the land occupier. See *Taneian v. Meghrigian,* 15 *N. J.* 267, 273–274 (1954); *Imre v. Riegel Paper Corp.,* 24 *N. J.* 438, 443–446 (1957); *Berger v. Shapiro,* 30 *N. J.* 89 (1959); see also *Restatement, Torts* §§ 329 *et seq.* These common law classifications are sufficiently flexible to fulfill the purposes of our legal system in serving the needs of present day society. For example, compare *Fleckenstein v. Great Atl. & Pac. Tea Co.,* 91 *N. J. L.* 145 (*E. & A.* 1917) with *Murphy v. Kelly,* 15 *N. J.* 608 (1954); see *Taylor v. N. J. Highway Authority,* 22 *N. J.* 454, 464 (1956). We believe that adherence to the traditional classifications is

desirable in that it lends a reasonable degree of predictability to this area of the law. These classifications also aid in the proper distribution of trial functions between judge and jury, wherein the latter determines only disputed questions of fact. We therefore proceed to the initial inquiry into the plaintiff's status as to each defendant at the time and place he sustained his injury.

The distinction between invitees, licensees and trespassers was stated in *Lordi v. Spiotta*, 133 *N. J. L.* 581, 584 (*Sup. Ct.* 1946) thus: "The first come by invitation, express or implied; the second are those who are not invited but whose presence is suffered; the third are neither invited nor suffered." See also *Restatement, Torts* §§ 329 *et seq.* Accordingly, one may enter the premises of another without invitation, express or implied, and be regarded as a licensee rather than a trespasser, if his presence was either expressly or impliedly permitted by the possessor of the premises.

Prevailing customs often determine whether a possessor of land is willing to have a third person come thereon. They may be such that it is entirely reasonable for one to assume that his presence will be tolerated unless he is told otherwise. See *Restatement, supra*, § 330, *comment* (*d*). Though the defendant tenant did not expressly authorize Selleck or any other employee to have guests at the factory, there was no evidence that employees were forbidden to have their guests on the premises. No signs were posted informing such visitors of an unwillingness to admit them. Moreover, Batten, the tenant's foreman who was in charge of the floor that evening, was the person in a position to execute any policy his employer may have had toward excluding such persons. He took no action that would indicate to the plaintiff or Selleck any disapproval of the plaintiff's presence in the factory.

We believe that visiting an employee at his place of employment, where a hazardous activity is not being conducted in the area visited, does not go beyond generally

accepted modes of behavior or custom, and in the absence of any prior expression of disapproval by the employer the visitor is not a trespasser but one whose presence is suffered and therefore is lawfully upon the premises. Such person falls within the class termed by the *Restatement of Torts* as a gratuitous licensee. §§ 330, 331. See *Menard v. Cashman,* 94 *N. H.* 428, 55 *A. 2d* 156 (*Sup. Ct.* 1947); see also *Annotation,* 89 *A. L. R.* 757 (1934).

It is settled that where an owner rents out portions of a building to several tenants, retaining in his own control the passageways for the common use of the tenants and those having occasion to visit them, he is under a duty to exercise reasonable care to have the passageways reasonably safe for such use. *Shemin v. Steinberg,* 117 *N. J. L.* 458 (*Sup. Ct.* 1937); *Roth v. Protos,* 120 *N. J. L.* 502 (*Sup. Ct.* 1938); *Restatement, Torts,* § 360; *Annotation, "Liability of landlord for personal injuries due to defective halls, stairways, and the like for use of different tenants,"* 97 *A. L. R.* 220 (1935).

In the *Roth* case, *supra,* it was said:

"Defendant [landlord] had control and possession of the stairway in question. Entirely apart from any contractual obligation, this fact imposed upon her the duty of exercising reasonable care to maintain the stairway reasonably fit for use by occupants of the premises and by others having lawful occasion to be present." 120 *N. J. L.* at *page* 504.

See *Taylor v. N. J. Highway Authority, supra.* In *Taneian v. Meghrigian, supra,* this court said:

"[T]hose who enter in the right of the tenant, even though under his mere license, make a permissible use of the premises for which the common ways and facilities are provided. * * * the landlord's obligation 'is that reasonable care and skill have been exercised to render the premises reasonably fit for the uses which he has invited others to make of them.' " 15 *N. J.* at *pages* 277–278.

Thus, the court in *Taneian* concluded "that one may be an invitee of the landlord and a mere licensee of the tenant;

the landlord may be liable as such to a gratuitous licensee of the tenant though the tenant would be under no liability." Dean Prosser has suggested that the explanation for such a conclusion is that the landlord has held out the common passageways of the premises as open and provided for the use of any one coming for all usual and customary visits to his tenants and to that extent has made such ways a public place. *Prosser, "Business Visitors and Invitees,"* 26 *Minn. L. Rev.* 573, 601 (1942). And as the *Restatement of Torts* indicates, the lessor "has a business interest in the use of these facilities by any person whom his lessee may choose to admit, irrespective of whether the visit of such a person is for his own or the lessee's business purpose or whether he comes as a mere social guest or other gratuitous licensee of the tenant." § 332, *comment (h)*. On the present record the plaintiff was a licensee of the tenant and therefore an invitee of the owner in the use of the common passageway. Unless on the retrial there is evidence of prohibition, the court should charge that plaintiff was such a licensee and invitee.

It was for the jury to determine whether the plaintiff was within that class of persons whose presence on the platform should have been reasonably anticipated by the owner. *Prosser, Torts* (2d ed. 1955), 471–73. On the one hand, the jury could find that the exit by way of the elevator and the passageway, even though they were located in the rear of the building, may have been a convenient means of egress from the upper floors and therefore a route which the owner might reasonably anticipate would be used by persons such as a guest of a tenant's employee when leaving the building. *Cf. Hussey v. Long Dock Railroad Co.,* 100 *N. J. L.* 380 (*E. & A.* 1924). The jury might consider in this respect the absence of a sign limiting the use of this area to employees and business visitors of the tenants in the building. On the other hand, the jury could find that the location of the elevator and platform, and the purpose for which they were designed, were such as not to include

the reception of persons for other than business reasons, and therefore the presence of a person in plaintiff's class would not be reasonably anticipated. *Cf. Restatement, Torts,* § 360, *comment (d)*. The jury might conclude that the common stairway in the front of the building was the only proper means of egress which the owner could reasonably anticipate would be used by persons in the plaintiff's class. The resolution of this issue requires a weighing of conflicting inferences which may be drawn from the evidence and as such falls within the province of the jury. *DeRienzo v. Morristown Airport Corp.,* 28 *N. J.* 231 (1958).

Defendant owner further contends that there is no evidence of negligence on its part in that there was no showing of a deviation from accepted standards in the construction of the platform. It contends that the only proof of its negligence was the failure to provide a light and that darkness itself is not a dangerous condition. It relies on *Triggiani v. Olive Oil Soap Co.,* 1 *N. J. Super.* 55 (*App. Div.* 1948); see related case in 12 *N. J. Super.* 227 (*App. Div.* 1951). In that case an employee of a tenant was injured by a fall on an unlighted common stairway in a factory building. The stairway itself was not deemed hazardous. In absolving the landlord from liability the court held that in the absence of a defect in the stairway itself the landlord was under no duty to provide a light unless he had assumed the obligation or was required to do so by statute. In the present case, however, it was open to the jury to find that there was a structural situation which presented an exceptionally hazardous condition to one who could not observe it. This is wholly apart from any question of departure from standards of construction. The statement in *Hedges v. Housing Authority of Atlantic City,* 21 *N. J. Super.* 167, 170 (*App. Div.* 1952), is *apropos:*

"[I]f the passageway is so constructed or maintained as to be dangerous, and the landlord is chargeable with notice of the condition, he must provide a light so that the danger may be readily seen, or he must provide another safeguard. *Higgins v. County*

316

*Seat B. & L. Ass'n*, 123 *N. J. L.* 116 (*Sup. Ct.* 1939). Perhaps it were better stated that a landlord who negligently fails to provide a passageway that is safe in the dark, may absolve himself from liability by lighting the passageway so that its use becomes safe."

In the present case, in view of the location of the recess in its relation to the elevator and platform, and the absence of any guard rail around the recess, we believe that the jury could conclude that the defendant owner was negligent in failing to provide a light at the scene after it had notice of its absence.

██ The evidence does not support a conclusion that as a matter of law the plaintiff was guilty of contributory negligence or that he assumed the risk or that he disregarded an obvious peril. The plaintiff was following two men who were familiar with the platform. He was not venturing on his own. The question whether in these circumstances a reasonably prudent person would have followed them from the elevator is plainly one for the jury. See *Benton v. Y. M. C. A.*, 27 *N. J.* 67, 71 (1958).

We conclude that the Appellate Division was correct in holding that plaintiff's claim against the defendant owner should have been submitted to the jury.

 A different problem is presented with respect to plaintiff's claim against the tenant. We have concluded above that on the present record the plaintiff as a guest of Selleck was a licensee on the tenant's premises. As such it has been held that the only duty which the tenant owed him was to abstain from acts willfully injurious. *Fitzpatrick v. Cumberland Glass Mfg. Co.*, 61 *N. J. L.* 378 (*Sup. Ct.* 1898); *O'Neill v. Gem Building and Loan Ass'n*, 9 *N. J. Misc.* 1084 (*Sup. Ct.* 1931); *Willins v. Ludwig*, 136 *N. J. L.* 208 (*E. & A.* 1947). It is not suggested that the tenant was guilty of willful conduct. A recognized exception to the general rule is that where there is a known dangerous condition on the premises which the occupier could reasonably anticipate that his licensee would not observe and avoid, he must either give warning or make the condition

reasonably safe. See *Berger v. Shapiro, supra.* It is undisputed that the alleged dangerous condition was in a common passageway under the exclusive control of the owner. The tenant had no authority to remedy the condition and consequently was under no duty to do so. *Prosser, Torts,* 471. As to that part of the exception requiring a warning to be given, we think that where a building has been rented to several tenants, and the landlord has retained control over the common passageways, there is no duty upon a tenant to warn a guest of his employee of any condition that might exist beyond that part of the premises occupied by the tenant and over which he has no control. See *Sydor v. Warpack,* 332 *Ill. App.* 138, 73 *N. E. 2d* 924 (*App. Ct.* 1947). The practicability of this limitation can readily be seen when we consider, for example, the situation in a large office building. To impose liability on a tenant for injuries to social guests of his secretary or other employee because the tenant has failed to warn them of a hole in the floor of the lobby seems to us to be an unreasonable extension of the exception to the general rule limiting the tenant's duty of care. *Comment (a),* § 360 of the *Restatement of Torts,* indicates that there may be certain circumstances wherein a tenant might become subject to liability to his gratuitous licensees if he fails to warn them of the danger involved in using the common approaches. However, no specific example is given and we have been unable to find any authority imposing such a duty upon a tenant under the facts here presented. The cases relied upon by the Appellate Division in the first opinion in this action, 46 *N. J. Super.* at *page* 329, namely, *Bass v. Hunt,* 151 *Kan.* 740, 100 *P. 2d,* 696 (*Sup. Ct.* 1940) and *Cannon v. S. S. Kresge Co.,* 233 *Mo. App.* 173, 116 *S. W. 2d* 559 (*Ct. App.* 1938), are factually inappropriate. They deal with injuries sustained by business invitees of the tenants on parts of the premises over which the tenants exercised a measure of control.

Moreover, the partners of the tenant were not actually present and had no personal knowledge of plaintiff's intended

visit. The plaintiff was not a customer or a business invitee of theirs and there was no evidence that at the time of the occurrence either Selleck or Batten was performing any service for the tenant in relation to the plaintiff. See *Restatement, Agency,* § 242; *Hall v. Passaic Water Co.,* 83 *N. J. L.* 771, 775 (*E. & A.* 1912); *Lippman v. Ostrum,* 22 *N. J.* 14 (1956). The plaintiff's testimony that he was carrying a carton does not alter this relationship. Neither Batten nor Selleck asked him to help them. Indeep, Batten was unaware of his attempted assistance.

It may well be that the trial court erred in not permitting Selleck upon defendant tenant's objection to testify that on prior occasions his wife and daughter had visited him at defendant tenant's factory. The purpose of this testimony was to indicate a course of conduct that would tend to show that plaintiff was a licensee of the tenant. However, the error was harmless in light of our conclusion that even though the plaintiff was the tenant's licensee, there was no breach of any duty owed to him by the tenant.

The judgment of the Appellate Division in plaintiff's action against I. Jay Realty Company is affirmed, and its judgment in plaintiff's action against Aaron Sachs, Isidore Sachs, J. Milton Sachs, partners trading as the New Jersey Knitwear Co., and the New Jersey Knitwear Company, a corporation, is reversed and the judgment of the trial court in favor of these defendants is reinstated.

BURLING, J. (dissenting in A–120 and concurring in the result in A–121). I vote to reverse the judgment of the Superior Court, Appellate Division, both as to the defendant owner, I. Jay Realty Company (A–120), and as to the defendants tenants, Arnold Sachs, Isidore Sachs and J. Milton Sachs, partners trading as the New Jersey Knitwear Co., and New Jersey Knitwear Co., a corporation of New Jersey (A–121).

With respect to the appeal of the owner I do not find any evidence in the record from which an inference might be

drawn that plaintiff was upon the premises with the expressed or implied acquiescence of the tenants. In the absence of specific proof upon the question I would not assume a general custom that guests of employees are permitted to visit with them at the employer's establishment —at least not in a manufacturing plant such as is involved in the instant case. The foregoing leads to the conclusion that plaintiff was not a licensee of the tenants but a trespasser. And if that be so, then the plaintiff was not owed the duty of reasonable care and the owner was entitled to a judgment of dismissal.

With respect to the appeal of the tenants, as I have indicated, plaintiff's status was that of a trespasser and not a licensee. In this case, a mature person was involved and he was not owed the duty of having dangerous conditions made reasonably safe or being warned of such conditions.

In my analysis the problem of what duties are owed to a licensee of a tenant for conditions existent in common passageways which are controlled by the owner is not reached.

But the matter is one of importance and I therefore add that while I do not accept the majority's initial premise that plaintiff was a licensee of the tenants, I am in accord with the views expressed in the opinion as to the duties of the tenants under the circumstances of this case if that premise be adopted.

JACOBS and SCHETTINO, JJ. (dissenting in part). It seems to us that the circumstances outlined here by Justice PROCTOR and in the Appellate Division by Judge Freund (see 53 *N. J. Super.* 336, 340–342 (1958)) presented jury issues not only as to the landlord's responsibility because of the negligent failure of the landlord or its agents to light the rear means of egress but also as to the tenant's responsibility because of the negligent failure of the tenant or its agents to warn the plaintiff, who was lawfully on its premises and was properly using the rear means of egress along with the tenant's acting foreman and its employee, that there was

(as the majority acknowledges a jury could readily find) "a structural situation which presented an exceptionally hazardous condition to one who could not observe it." See *Restatement, Torts* § 360, *comment* (*a*) (1934); Clapp, S. J. A. D., in *Snyder v. I. Jay Realty Co.,* 46 *N. J. Super.* 323, 328–330 (*App. Div.* 1957). Accordingly, we would, as did the Appellate Division, award a new trial to the plaintiff against both the landlord and the tenant.

The I. Jay Realty Co.:

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—Justice BURLING—1.

The Aaron Sachs case:
BURLING, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, FRANCIS, PROCTOR and HALL—5.

*For affirmance*—Justices JACOBS and SCHETTINO—2.